DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIA ANGELICA "ANGIE" CARBAJAL, | Case No. _____ |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | Filing Fee: $400.00 |
| HAYES MANAGEMENT SERVICES, INC., | |
| Defendant. | |

COMES NOW Plaintiff, Maria Angelica "Angie" Carbajal, by and through her counsel of record, Casperson Ulrich Dustin PLLC, and for cause of action against Defendant Hayes Management Services, Inc., alleges and complains as follows:

## JURISDICTION AND VENUE

1.      This is an action brought under the Title VII of the Civil Rights Act, 42 U.S.C. § 2000, *et seq.*, and the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3.      Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this

judicial district.  Venue also properly lies in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

## PARTIES

4.   Plaintiff Maria Angelica "Angie" Carbajal ("Plaintiff") is a female citizen and resident of the United States of America, who resides in Bonneville County, Idaho.

5.   Defendant Hayes Management Services, Inc. ("Defendant") is an Idaho corporation, doing business in Bonneville County, Idaho.

6.   At all times relevant to this Complaint, Defendant regularly employed fifteen or more persons whose services were performed in the State of Idaho and was engaged in an industry affecting commerce.  Consequently, Defendant's conduct is properly regulated by Idaho Code § 67-5901, *et seq.*; and 42 U.S.C. § 2000, *et seq.*

## FACTS COMMON TO ALL COUNTS

7.   Plaintiff realleges and incorporates by reference paragraphs 1 through 6 as though fully set forth herein.

8.   In or around January 2012, Plaintiff began working for Defendant as a receptionist.

9.   Within a short time after Plaintiff's employment with Defendant began, Defendant's owner, Chris Hayes ("Hayes") and the other office staff began having inappropriate conversations in the office.  They would often discuss their sexual relations with their spouses and touch each other in a sexual manner.

10.   Plaintiff was uncomfortable with the behavior, but, because she was a new employee, she was afraid to complain about the discussions and conduct.  Plaintiff would generally just walk away from the conversations and keep to herself.

11.     When staff members observed that Plaintiff would not participate in the inappropriate sexual conversations or sexual touching, they would tell Plaintiff she was "too serious" and that she needed to "loosen up."

12.     Hayes's inappropriate sexual behavior in the office escalated.  He would stand next to Plaintiff, run his hands down Plaintiff's backside, slap her buttocks, attempt to touch her chest, and attempt to kiss Plaintiff, among other things.  He engaged in similar actions with other staff members.

13.     Because Hayes's behavior was so common in the office, his behavior became normalized, and there were times Plaintiff found herself joking or laughing about it so she would not be isolated or punished for her disapproval.

14.     Hayes often wanted to hire young women for open positions with Defendant because of how they looked or their body shape.  Because Plaintiff had seen how Hayes had treated her and the other female staff members, she was seriously concerned about Hayes's plan to hire a young woman, and warned Hayes's wife about it, hoping she would be able to prevent Hayes from hiring the young woman and subjecting her to the same inappropriate, sexual talk and conduct to which other female staff members had been subjected.

15.     Defendant's offices are located next to an elementary school.  Hayes would often make comments about how the schoolgirls looked as they walked past the office, as well as other females walking by, such as parents of students.

16.     Hayes also made comments to Plaintiff regarding sex crimes in the media, such as the cases against Bill Cosby and Jared Fogel, the prior Subway spokesperson.  Hayes would make comments defending Bill Cosby, blaming Cosby's accusers, and defending Jared Fogel,

who was convicted of possessing child pornography, saying that a person has the right to watch whatever they want on their computer.

17.    Plaintiff was very disturbed and offended by Hayes's comments regarding elementary schoolgirls and sex crimes.

18.    In January 2016, a fellow employee caught Hayes watching pornography in his office at work.  Plaintiff was informed about this incident and reported it to Brandy Mann ("Mann"), another employee who had the ability address the concerns with Hayes.  Mann told Plaintiff she never sits or stands on the same side of the desk as Hayes because of his inappropriate touching.  However, nothing was done to address Plaintiff's concerns.

19.    Additionally, in January 2016, because Plaintiff was so stressed about Hayes's behavior in the office, she reached out to Hayes's pastor, who came to the office once a week to meet with Hayes for bible study.   Plaintiff reported her concerns about Hayes's sexually inappropriate comments, actions and behaviors at to the office to the pastor, who said he would speak with Hayes about Plaintiff's concerns.

20.    A few days went by, and Plaintiff decided it best to try to address her concerns with Hayes face-to-face.

21.    In or around mid- to late-January, 2016, Plaintiff met with Hayes and expressed her concerns about his inappropriate behavior in touching staff members, talk of sexual relationships with spouses, comments regarding client's appearances, staff reporting they were uncomfortable with his behavior, and staff reporting finding him watching pornography in his office, among other things.

22.    At that point in time, the business was growing, there were recently hired new staff, and Defendant intended to hire more.  Consequently, Plaintiff expressed concern that Hayes's

behavior needed to stop for the sake of current staff as well as new staff.   Hayes acknowledged he had a problem and said he would try to "be more careful."

23.    After the conversation, things slightly improved for a short time, but then Hayes returned to his behavior.

24.    Plaintiff's office was moved to the other side of the building, where she did not see Hayes as frequently.   However, Hayes continued to sexually harass Plaintiff when he came over to Plaintiff's side of the building, and would try to kiss and touch Plaintiff. Plaintiff tried to ignore his conduct and keep working.

25.    In or around May 2017, after Plaintiff returned from a vacation, and had been away from the sexually-charged work environment, she realized she could not continue to work for Defendant anymore due to Hayes's sexual advances and behaviors.   Hayes's actions continued, and he propositioned Plaintiff to have an affair with him.   Plaintiff continued to refuse his advances.

26.    In or around July 2017, Plaintiff provided notice to Defendant that she would only be working 20 hours per week and intended to leave employment with Defendant. Plaintiff did so because she could no longer put up with Hayes's sexual harassment and the hostile work environment.

27.    In or around August 2017, Plaintiff expressed concerns about Hayes's sexual advances and inappropriate sexual behavior toward Plaintiff and the staff to Defendant's attorney, Dru Guthrie ("Guthrie").   Guthrie told Plaintiff they would discuss it further, but never spoke with Plaintiff about it again.

28.    On or around August 30, 2017, Plaintiff received an offer to work for another employer. On or around August 31, 2017, Plaintiff went to work as usual for Defendant, and intended

to inform Hayes that she had found other employment and was providing her two weeks' notice.

29.     Plaintiff was unable to speak with Hayes that morning. However, she did inform a few staff members that she had found new employment and was putting in her two weeks' notice.

30.     Shortly after the lunch hour, Guthrie arrived at Defendant's offices and informed Plaintiff he needed to speak with her.  He took Plaintiff outside and told her that Hayes wanted her to leave due to what he claimed was a conflict of interest with Plaintiff being hired by a former client of Defendant.  Guthrie also informed Plaintiff that Hayes was hurt and disappointed Plaintiff was leaving her employment with Defendant.

31.     Plaintiff informed Guthrie that she could no longer work for Defendant because of the constant inappropriate sexual comments and touching in the work environment, and that Guthrie was well-aware of Hayes's actions.

32.     Plaintiff asked to speak with Hayes, but Guthrie told Plaintiff Hayes did not want to speak with her.  Plaintiff asked Guthrie for a letter stating her employment was being terminated. Guthrie stated he would provide the letter.  Plaintiff went into the office to wait for the letter and to gather her personal items.

33.     While Plaintiff was waiting for the letter from Mr. Guthrie, a staff member called the police and had Plaintiff escorted off the property.

34.     On or around February 23, 2018, Plaintiff dually filed a Charge of Discrimination with the Idaho Human Rights Commission and the Equal Employment Opportunity Commission.

35.     On or about April 26, 2019, Plaintiff was issued her Notice of Right to Sue.

36.     Plaintiff has exhausted her administrative remedies.

## COUNT ONE
## VIOLATION OF TITLE VII/IDAHO HUMAN RIGHTS ACT
### (Sexual Harassment/Hostile Work Environment)

37.     Plaintiff realleges and incorporates by reference paragraphs 1 through 36 as though fully set forth herein.

38.     Plaintiff is female and therefore belongs to a protected class under Title VII of the Civil Rights Act and the Idaho Human Rights Act.

39.     Plaintiff was subjected to unwanted comments and touching while at work, including sexual comments, sexual advances, grabbing, groping, and attempted kissing.

40.     Such conduct was unwelcome.

41.     Such conduct was based upon Plaintiff's sex.

42.     Such conduct was so severe and pervasive as to alter the terms and conditions of Plaintiff's employment and create a sexually abusive and hostile work environment.

43.     Plaintiff perceived the work environment to be abusive, hostile, and/or offensive.

44.     A reasonable woman in Plaintiff's circumstances would consider the working environment to be abusive, hostile and/or offensive.

45.     Plaintiff was required to acquiesce to such conduct in order to keep her employment. Consequently, Plaintiff suffered a tangible employment action as a result of the hostile work environment.

46.     As a direct and proximate result of Defendant's actions and/or failure to act, Plaintiff has suffered and will continue to suffer loss of earnings, benefits, and job opportunities, as well as emotional distress consisting of outrage, shock, and humiliation.  Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to her.

47.   Defendant's conduct was willful or done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT TWO
## VIOLATION OF TITLE VII/IDAHO HUMAN RIGHTS ACT
### (Retaliation)

48.   Plaintiff realleges and incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

49.   Plaintiff engaged in a protected activity under Title VII and the Idaho Human Rights Act when she reported Hayes's sexual harassment and the hostile work environment in which she worked.

50.   Plaintiff was subject to adverse employment actions as a result of her protected activity.

51.   Defendant discriminated against Plaintiff and/or retaliated against Plaintiff due to her engaging in protected activity.

52.   As a direct and proximate result of Defendant's actions and/or failure to act, Plaintiff has suffered and will continue to suffer loss of earnings, benefits, and job opportunities, as well as emotional distress consisting of outrage, shock, and humiliation.  Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to her.

53.   Defendant's conduct was willful or done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## ATTORNEYS' FEES

54.     As a further and direct result of Defendant's actions and/or failure to act, Plaintiff has been

compelled to retain the services of counsel and has incurred, and will continue to incur,

costs and attorneys' fees. Plaintiff is therefore entitled to attorneys' fees and costs incurred

in pursuing this action pursuant to 42 U.S.C. § 1981(b) and 42 U.S.C. § 2000e-5(k).

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

Plaintiff seeks the judgment of the Court against Defendant as follows:

1.      For general and compensatory damages, and all other statutorily available damages, in an

amount to be proven at trial;

2.      For any equitable remedies available to her;

3.      For punitive damages;

4.      For statutorily available costs and attorneys' fees;

5.      For prejudgment interest on all amounts claimed; and

6.      For such other and further relief as the Court deems just and proper.


DATED this 23rd day of July, 2019.                   _____/s/_____

Amanda E. Ulrich, Esq.
Casperson Ulrich Dustin PLLC