UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIA ANGELICA "ANGIE" CARBAJAL,<br><br>    Plaintiff,<br><br>    v.<br><br>HAYES MANAGEMENT SERVICE, INC.,<br><br>    Defendant. | Case No. 4:19-cv-00287-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |
| HAYES MANAGEMENT SERVICE, INC.,<br><br>    Counter-claimant,<br><br>    v.<br><br>MARIA ANGELICA "ANGIE" CARBAJAL,<br><br>    Counter-respondent. | |

## INTRODUCTION

Before the Court is Defendant Hayes Management Service's Renewed Motion for Summary Judgment (Dkt. 32). Hayes Management asks the Court to find that it did not have 15 "employees" for 20 or more weeks in 2016 or 2017 and thus was not an "employer" under Title VII of the Civil Rights of 1964. The motion is fully briefed and at issue. For the reasons that follow the Court will deny the motion.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

Plaintiff Angie Carbajal alleges Defendant Hayes Management and its owner Chris Hayes subjected her sexual harassment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq. Amd. Compl.*, Dkt. 30. Carbajal also alleges Hayes Management retaliated against her for pursuing her remedies under the above acts. *Id.*

In November 2019 Hayes Management filed a motion for summary judgment arguing that Carbajal's Title VII claim failed because Hayes Management did not have a sufficient number of employees to qualify as an "employer" under Title VII. Dkt. 8. The Court denied this motion without prejudice because Plaintiff had not obtained discovery relevant to the issue. Dkt. 13. The parties agreed to bifurcate discovery—addressing the Title VII applicability issue first. Discovery is now complete on this discrete issue and Hayes Management has renewed its motion for summary judgment regarding the number of people it employed. Dkt. 32.

Carbajal contends that Hayes Management had an employment relationship with more than 15 employees for the entirety of 2016 and 2017. Hayes Management argues that it only had 15 or more employees for 14 weeks in 2016

**MEMORANDUM DECISION AND ORDER - 2**

and 16 weeks in 2017. *See C. Hayes Aff.* ¶¶ 7-8, Dkt. 42. A brief discussion of the relevant facts is provided below. The facts will be set out in more detail as they relate to the analysis for each potential employee.

Carbajal worked for Hayes Management from 2012 to 2017, when she was terminated. *Carbajal Depo.*, Dkt. 52-6. Carbajal was Hayes' Business Manager from 2015 until her termination. *Id.* ¶ 3-4. Hayes Management provides bookkeeping, payroll, and tax preparation services. *See Hayes Depo.*, Dkt. 54. Chris Hayes and his wife, Pauline, own 100% of Hayes Management as community property. *Hayes Aff.* ¶ 3, Dkt. 42. Chris Hayes founded Hayes Management in 1990 and has been the President of the company since that time. *Hayes Depo* at 7-8. Pauline Hayes is a director of the company and works there part time, but does not draw a salary. *Id.* at 26-27. Her level of involvement with the day-to-day operation of the company is disputed by the parties.

The nature of the tax preparation business means that Hayes Management has more need for staff in the spring, during tax season, than the rest of the year. *Hayes Aff.* ¶ 11, Dkt. 42; *see also Time Records*, Dkt. 44 at 50-102. The record shows that the number of staff regularly working at Hayes Management was at its highest from January through April and was lower the rest of the year.

Each year Chris Hayes puts on a one-night-per-week tax training program

MEMORANDUM DECISION AND ORDER - 3

beginning in October or November and running through January. *Hayes Aff.* ¶ 40. The parties dispute whether this fall tax training is mandatory or voluntary for tax preparers wanting to work for Hayes Management. *Compare id. with Carbajal Dec.* ¶¶ 18-19. The record shows that Chris Hayes would use the course to train tax preparers who worked for him and evaluate potential tax preparers he may hire. *Hayes Depo.* at 10-12; *Carbajal Dec.* ¶¶ 18-19. Many tax preparers worked for Hayes year after year.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

**MEMORANDUM DECISION AND ORDER - 4**

247–48 (1986). There must be a genuine dispute as to any material fact—a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA,* 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu,* 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Devereaux,* 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324, 106 S. Ct. 2548. However,

**MEMORANDUM DECISION AND ORDER - 5**

the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003).

## ANALYSIS

An employer is not subject to Title VII unless it "has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). The "threshold number of number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006).

Title VII defines "employee" as "an individual employed by an employer," § 2000e(f), but this definition is "completely circular and explains nothing." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). The United States Supreme Court addressed Title VII's fifteen-employee requirement in *Walters*, which establishes the framework to determine whether this requirement is met. *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 211 (1997). *Walters* set out a

two-step framework to determine if someone is an employee.

The first step is application of the "payroll method," which examines whether an individual appears on the employer's payroll. 519 U.S. at 206-7. The second step is application of "traditional principles of agency law" to determine whether an employment relationship exists. 519 U.S. at 211 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (discussing ERISA's definition of "employee," which is identical to Title VII's definition)). The Supreme Court stressed that "the ultimate touchstone under § 2000e(b) is whether an employer has employment relationships with 15 or more individuals for each working day in 20 or more weeks during the year in question." *Walters*, 519 U.S. at 212.

Not surprisingly, the parties disagree as to whether Hayes Management had 15 or more employees for each working day in 20 or more weeks during the relevant years of 2016 and 2017. The parties disagreement focuses on 4 issues: 1) whether Chris or Pauline Hayes count as employees, 2) whether Rachel Baron was an employee during her unpaid internship, 3) how to calculate which employees were on "payroll," and 4) whether Hayes Management had an employment relationship with temporary tax preparers in the fall.

### A. Chris Hayes

Chris Hayes founded and owns 100 percent of Hayes Management as

community property with Mrs. Hayes. *C. Hayes Aff.* ¶ 3-4, Dkt. 42. It is not disputed that Mr. Hayes controls the business operations of Hayes Management. *Pl.'s Mem* at 15, Dkt. 52. Mr. Hayes has authority to hire and fire employees, direct the work of Hayes Management staff, and make decisions about corporate management. *C. Hayes Aff.* ¶ 3.

Carbajal argues that because Mr. Hayes issued himself a W-2 and works full time for Hayes Management he is an employee for purposes of Title VII. *Pl.'s Mem.* at 15. Carbajal argues that the factors set out in *Clackamas* do not apply to Mr. Hayes because *Clackamas* was focused on owners of a professional corporation. *Id.* (citing *Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 442 (2003)). However, the Ninth Circuit has not limited application of the *Clackamas* factors only to professional organizations. *See Fichman v. Media Ctr.*, 512 F.3d 1157, 1160 (9th Cir. 2008). The *Clackamas* factors are the correct factors to determine if Mr. Hayes is an employee of Hayes Management.

In *Clackamas*, the Ninth Circuit was considering whether a shareholder-director was an employee of a medical clinic. *Clackamas*, 538 U.S. at 442. The Ninth Circuit determined that the common-law element of control was the principal guidepost that should be followed. *Id.* at 448. The Ninth Circuit stated that titles or the existence of an "employment agreement" should not guide the

analysis. *Id.* at 450. Instead the Ninth Circuit focused on whether the person "acts independently and participates in managing the organization, or whether the individual is subject to the organization's control" *Id.* at 449 (citations omitted).

Here, Mr. Hayes is the President of Hayes Management and reports to the directors, who are himself and Ms. Hayes. No one can fire Mr. Hayes nor regulate his work. No one else in Hayes Management supervises his work. Mr. Hayes has direct control over hiring, firing, and organization management decisions. *See Employee Handbook*, Dkt. 54-2. And, Mr. Hayes shares in the profits, loses, and liabilities of the organization. There are no disputed issues of material fact on this issue – Mr. Hayes acts independently in managing the organization and is thus not an employee. *See Carbajal Aff.* ¶ 11 ("Everyone worked at Mr. Hayes's direction.").

### B. Pauline Hayes

Pauline Hayes is a director of, and co-owns, Hayes Management with Mr. Hayes. *P. Hayes Aff.* ¶¶ 3 5, Dkt. 33. She shares in the profits and losses of Hayes Management. *Id.* ¶ 4. Mrs. Hayes shares in the management of Hayes Management, including decisions regarding asset purchases, hiring/firing, and employee supervision. *Id.* ¶ 6. Mr. Hayes cannot discharge Mrs. Hayes or regulate her work. *Id.* ¶ 7; *C. Hayes Aff.* ¶ 3, Dkt. 42. Finally, there are no written

**MEMORANDUM DECISION AND ORDER - 9**

employment agreements or contracts between Mrs. Hayes and Hayes Management. *P. Hayes Aff.* ¶ 8. Mrs. Hayes came and went as she pleased, and helped Mr. Hayes with stuff that he would normally take care of. *Id.* at 27-28.

Viewing the evidence in a light most favorable to Carbajal, the Court assumes the following facts: Mrs. Hayes had her own desk in the office and took direction from Mr. Hayes. *Carbajal Dec.* ¶ 10. Mrs. Hayes worked 30 or more hours per week during tax season. *Id.* Mrs. Hayes did not direct any other employees in the office. *Id.* 11. On the other hand, it appears to be undisputed that Mrs. Hayes did not have other employment, and was not paid by Hayes Management. *Hayes Depo.* at 24-25, 28-29. Mr. Hayes added Mrs. Hayes to Hayes Management's time tracking program, but removed her because she did not want to track her time. *Id.* at 25.

In *Fichman*, the Ninth Circuit upheld the district court's finding that members of the Board of Directors were not employees. *Fichman v. Media Ctr.*, 512 F.3d 1157, 1160 (9th Cir. 2008). There the Ninth Circuit applied the *Clackamas* factors, noting in particular, that the board members had other jobs, were not compensated for their roles, did not have their work supervised, nor did they share in the day-to-day responsibilities of the regular staff. *Id.*

Here, Mrs. Hayes does not have another job. It appears that she does share in

**MEMORANDUM DECISION AND ORDER - 10**

at least some of the day-to-day responsibilities of Mr. Hayes and other staff. While Mrs. Hayes was not paid for her work, this is not a dispositive factor in determining whether she was an employee. *See Waisgerber v. City of Los Angeles,* 406 F. App'x 150, 151 (9th Cir. 2010). It is disputed whether she actually worked at the direction of Mr. Hayes or worked of her own accord. It is also disputed whether or not she had the ability to control management decisions.

Whether a person has an employment relationship with an employer is a factual inquiry. *U.S. Equal Employment Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 639 (9th Cir. 2019). Here there are material facts in dispute whether Mrs. Hayes was an employee of Hayes Management.[1] Therefore, for purposes of summary judgment the Court will consider Mrs. Hayes an employee.

### C. Rachel Baron

The parties dispute whether Rachel Baron should be counted as an employee during the months she was working as a volunteer.

Baron started at Hayes Management as an unpaid volunteer in February

---

[1] Hayes Management relies on *Woodbury v. Victory Van Lines*, 2018 WL 583076, at *6-*7 (D. Md. Nov. 7, 2018). There, the minority owner was also the wife of the majority owner and did some work for the company. The court found that minority owner was not an "employee" relying on her partial ownership and the marital relationship. However, there the plaintiff did not present evidence that the minority owner was controlled by the majority owner. Here Carbajal has offered evidence that Mrs. Hayes is controlled by Mr. Hayes.

**MEMORANDUM DECISION AND ORDER - 11**

2016. *Baron Aff.* ¶ 6. She was eventually hired as an employee in August 2016. *Id.* ¶ 10. Baron had completed her education prior to February 2016. *Id.* ¶ 4. She sought out Hayes Management and asked to volunteer to gain experience. *Id.* ¶ 5. Baron was also working as a waitress at the time and volunteered with Hayes Management as her waitress schedule allowed. *Id.* ¶ 7. Baron did not commit to volunteering a certain number of hours and did not have an employment arrangement with Hayes Management. *Id.* ¶¶ 7-8. Baron was not compensated for the work she did during the time she was a volunteer. *Id.* ¶ 9. Baron did not consider herself an "employee" of Hayes Management during the time she volunteered. *Id.* ¶ 12.

      Mr. Hayes told Baron that she would not be paid and that the volunteer work would not be a pathway to a paid position in the future. *C. Hayes Aff.* ¶ 29, Dkt. 42. Hayes Management did not normally have volunteers, so Baron's situation was unique for the company. *Id.* Baron tracked her time while volunteering. During the time she volunteered, Baron logged between 5 and 33 hours per pay period at Hayes Management. Dkt. 44 at 54-66.

      It appears to be undisputed that Baron did not receive any direct or immediate compensation for her work, but only received work experience. But, Carbajal trained Baron to do payroll work, business set-up, and other activities

**MEMORANDUM DECISION AND ORDER - 12**

similar to other employees. *Carbajal Dec.* ¶ 14. Hayes Management billed clients for Baron's work. *Id.* ¶ 16. Carbajal asked Mr. Hayes several times to start paying Baron. *Id.* After Baron became employed with Hayes Management the company did pay for her maternity leave. *Id.* ¶ 17. Hayes Management did not normally provide paid maternity leave for its employees. *Id.* Carbajal contends that the maternity leave was partially in compensation for Baron's unpaid work. *Id.*

The Ninth Circuit has addressed the distinction between interns and employees. In *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139 (9th Cir. 2017) the court considered whether cosmetology students were interns or employees under the Fair Labor Standards Act. *Id.* at 1143. The factors adopted in *Benjamin* include whether the individual received compensation or academic credit, whether the individual's work displaces the work of paid employees, whether the position provides significant educational benefit, whether the duration is limited, and whether there is an understanding of a paid position at the end of the "internship." *Id.* at 1146.

But, even if Baron's work is considered to be that of a volunteer rather than an intern, she may still be considered an employee. Carbajal relies on *Vonbrethorst v. Washington Cty.*, 2008 WL 2785549, at *3 (D. Idaho July 15, 2008)). There the court took up the issue of whether a plaintiff was a volunteer or employee under

**MEMORANDUM DECISION AND ORDER - 13**

the FLSA. However, in doing so, the court relied extensively on Department of Labor regulations implementing the FLSA. However, it is the EEOC which administers and enforces Title VII, so the DOL regulations considered in *Vonbrethorst* do not apply in this case. *See U.S. Equal Employment Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 639 (9th Cir. 2019).

Instead, under the Title VII analysis the first question as to whether an individual is an employee is a volunteer or employee is whether they receive significant renumeration. The EEOC Compliance Manual states that volunteers are usually not "employees" unless they receive "significant remuneration." EEOC COMPLIANCE MANUAL, SECTION 2 THRESHOLD ISSUES III.A.1.c. (May 12, 2000); *see also Waisgerber v. City of Los Angeles*, 406 F. App'x 150, 151 (9th Cir. 2010).

There are disputed issues of material fact as to whether Baron had an "employment relationship" with Hayes Management under either the intern or volunteer framework. Baron worked anywhere between 5 and 30 hours per pay period for Hayes Management doing payroll and business-opening work. Clients were billed for Baron's work. Baron did not receive any academic credit for her experience, nor was her work tied to any academic program. Further, and perhaps most importantly, Baron was provided paid maternity leave after she was hired,

**MEMORANDUM DECISION AND ORDER - 14**

even though Hayes Management had not provided paid maternity leave to other employees. Thus, there is a disputed issue of fact as to whether Baron received significant renumeration for her work – even though it was received after she began her formal employment. Therefore, for purposes of summary judgment, the court will consider Baron an employee from February through her formal employment start in August.

### D.     Tax Preparers

Hayes Management employed at least nine individuals who worked seasonally as tax preparers.[2] *See Def.'s Br.* at 11-12, 15, Dkt. 32-2. Hayes Management's records indicate that Shirley Codding and Benjamin Durkee also performed work for the company in the spring of 2016 and 2017. *See* Dkt. 47, 48. Hayes Management argues that these were truly seasonal employees called on an as-needed basis and did not have a continuing employment relationship.

Under *Walters* the first step is to determine whether an individual appears on the employer's payroll. Here, the parties dispute what constitutes "payroll." Hayes Management argues that individuals should only be included on payroll if they

---

[2] Defendant states that Bonnie Gray, Corrine Murdock, David Cousins, Devin Rowley, Roxanne Laird, Stephanie Cecil, Cori Alonso, and Bilma Luna worked as seasonal tax preparers for Hayes Management in 2015, 2016, and 2017.

received payment during the pay period. Carbajal disagrees and argues that the Court should consider all individuals listed in the Defendant's QuickBooks and TimeTrex records as active employees. Again, in resolving this dispute, we must accept as true the evidence most favorable to Carbajal, and give her the benefit of any reasonable inferences that can be drawn from that evidence. Defendant had each individual complete an I9 and W4 form at the beginning of their initial employment relationship, but did not have them complete a new form following any break from employment—indicating continued employment. This suggest an ongoing employment relationship with these individuals. In that view, Hayes Management had at least 18 employees on payroll for all of 2016 and 2017. *See Pl.'s Mem.* at 3-4.

The Court, in *Walters*, did not define "payroll." The court decisions considering a dispute about the meaning of payroll generally skip to the second step and determine whether or not the employer had an "employment relationship" with individuals alleged to be employees. The Court agrees with Hayes Management that relying on Quickbooks and time keeping records containing employee names but not showing any payment or active work by employees is overbroad because it fails to show an actual employment relationship.

Hayes Management argues that it did not maintain an employment

**MEMORANDUM DECISION AND ORDER - 16**

relationship with its seasonal tax preparers in between their employment engagements. *Def.'s Br.* at 11, Dkt. 32-2. To support its argument Hayes Management has submitted affidavits of its seasonal employees stating that they did not consider themselves employees when they were not working for the company. Dkt. 35-41. Further, Hayes Management argues that the tax training classes it offered were voluntary and open to anyone who wanted to attend. *Def.'s Br.* at 16, Dkt. 32-2.

On the other hand, there is evidence that seasonal tax preparers were required to attend tax training classes at the end of the year, which suggests that Hayes Management had an employment relationship with these individuals even when they were not actively being paid. Hayes Management provided a "2018-2019 Tax Season Expectations" to each tax preparer and expected them to sign it. The Expectations document states that tax trainings will occur once a week on Wednesday evenings for three hours per training. Dkt. 55. The document further states that "100% attendance at all training sessions is required." *Id.* The requirements described in the Expectations document are very similar to previous years. *Carbajal Dec.* ¶ 22. Further, the tax training sessions provided training specific to Hayes Management's processes. *Id.*

Thus, there is a factual dispute as to whether Hayes Management had an

**MEMORANDUM DECISION AND ORDER - 17**

employment relationship with its tax preparers in the months they attended the training. By Hayes Management's own calculations it had between eight and eleven employees in October, November, and December 2016. The tax training would start in October or November of each year and run through January of the following year. Mr. Hayes made an exception to the mandatory attendance policy for three of the tax preparers. *Carbajal Dec.* ¶ 18. This leaves at least six tax preparers who worked for Hayes Management in both 2016 and 2017 that are not included in Hayes Management's employee calculations during those months, but would have been required to attend the training

These tax preparers were not paid for attending the tax training sessions. However, there is enough evidence in the record that a jury could find that an employment relationship existed between the tax preparers and Hayes Management for the duration of the trainings. *See Global Horizons*, 915 F.3d at 638 ("There is 'no shorthand formula' for determining whether an employment relationship exists, so 'all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" (quoting *Darden*, 503 U.S. at 324)).

For the purposes of summary judgment, the Court will consider the six tax preparers as employees for the months of November and December 2016.

### E.     Conclusion

**MEMORANDUM DECISION AND ORDER - 18**

By Hayes Management's calculations it had between 8 and 11 employees during November and December of 2016. This includes Rachel Baron but excludes Pauline Hayes and the seasonal tax preparers. Hayes Management calculated that it had 15 or more employees for 14 weeks in 2016. Adding the seven additional employees —Pauline Hayes and the six tax preparers—to the calculation shows Hayes Management had 15 or more employees for 22 weeks of 2016. Accordingly, Hayes Management's motion for summary judgment will be denied.

## ORDER

**IT IS ORDERED that:**

1.   Defendant's Renewed Motion for Summary Judgment (Dkt. 32) is **DENIED**.

DATED: June 4, 2020

_____
B. Lynn Winmill
U.S. District Court Judge