DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIA ANGELICA "ANGIE" CARBAJAL,<br><br>Plaintiff,<br><br>v.<br><br>HAYES MANAGEMENT SERVICES, INC.; HAYES TAX & ACCOUNTING SERVICES, INC.; and CHRIS HAYES,<br><br>Defendants. | Case No. 4:19-CV-00287-BLW<br><br>**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, Maria Angelica "Angie" Carbajal, by and through her counsel of record, Casperson Ulrich Dustin PLLC, and for cause of action against Defendants Hayes Management Services, Inc., Hayes Tax & Accounting Services, Inc., and Chris Hayes, alleges and complains as follows:

**JURISDICTION AND VENUE**

1.  This is an action brought under the Title VII of the Civil Rights Act, 42 U.S.C. § 2000, *et seq.*, and the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*

2.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district. Venue also properly lies in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

**PARTIES**

4. Plaintiff Maria Angelica "Angie" Carbajal ("Plaintiff") is a female citizen and resident of the United States of America, who resides in Bonneville County, Idaho.

5. Defendant Hayes Management Services, Inc. ("Hayes Management") is an Idaho corporation, doing business in Bonneville County, Idaho. Hayes Management sold its assets, including good will and client list, to Hayes Tax in December 2020, while this litigation was pending.

6. Defendant Hayes Tax & Accounting Services, Inc. ("Hayes Tax") is an Idaho corporation, doing business in Bonneville County, Idaho, which was formed June 18, 2020. Hayes Tax is a successor to Hayes Management.

7. Defendant Chris Hayes is the 100% owner of Hayes Management. Chris's wife, Pauline Hayes, has an interest in Mr. Hayes's interest in Hayes Management through the marital community property.

8. Defendants Hayes Management, Hayes Tax, and Chris Hayes are referred to collectively hereinafter as "Defendants."

9. At all times relevant to this Complaint, Hayes Management regularly employed fifteen or more persons whose services were performed in the State of Idaho and was engaged in an industry affecting commerce. Consequently, Hayes Management's conduct is properly regulated by Idaho Code § 67-5901, *et seq.*; and 42 U.S.C. § 2000, *et seq.*

**FACTS COMMON TO ALL COUNTS**

10. Plaintiff realleges and incorporates by reference paragraphs 1 through 9 as though fully set forth herein.

11. In or around January 2012, Plaintiff began working for Hayes Management as a receptionist.

12. Within a short time after Plaintiff's employment with Hayes Management began, Hayes Management's owner, Mr. Hayes, and the other office staff began having inappropriate conversations in the office. They would often discuss their sexual relations with their spouses and touch each other in a sexual manner.

13. Plaintiff was uncomfortable with the behavior, but, because she was a new employee, she was afraid to complain about the discussions and conduct. Plaintiff would generally just walk away from the conversations and keep to herself.

14. When staff members observed that Plaintiff would not participate in the inappropriate sexual conversations or sexual touching, they would tell Plaintiff she was "too serious" and that she needed to "loosen up."

15. Mr. Hayes's inappropriate sexual behavior in the office escalated. He would stand next to Plaintiff, run his hands down Plaintiff's backside, slap her buttocks, attempt to touch her chest, and attempt to kiss Plaintiff, among other things. He engaged in similar actions with other staff members.

16. Because Mr. Hayes's behavior was so common in the office, his behavior became normalized, and there were times Plaintiff found herself joking or laughing about it so she would not be isolated or punished for her disapproval.

17. Mr. Hayes often wanted to hire young women for open positions with Hayes Management because of how they looked or their body shape. Because Plaintiff had seen how Mr. Hayes had treated her and the other female staff members, she was seriously concerned about Mr. Hayes's plan to hire a young woman, and warned Mr. Hayes's wife about it, hoping she would be able to prevent Mr. Hayes from hiring the young woman and subjecting her to the same inappropriate, sexual talk and conduct to which other female staff members had been subjected.

18. Hayes Management's offices are located next to an elementary school. Mr. Hayes would often make comments about how the schoolgirls looked as they walked past the office, as well as other females walking by, such as parents of students.

19. Mr. Hayes also made comments to Plaintiff regarding sex crimes in the media, such as the cases against Bill Cosby and Jared Fogel, the prior Subway spokesperson. Mr. Hayes would make comments defending Bill Cosby, blaming Cosby's accusers, and defending Jared Fogel, who was convicted of possessing child pornography, saying that a person has the right to watch whatever they want on their computer.

20. Plaintiff was very disturbed and offended by Mr. Hayes's comments regarding elementary schoolgirls and sex crimes.

21. In January 2016, a fellow employee caught Mr. Hayes watching pornography in his office at work. Plaintiff was informed about this incident and reported it to Brandy Mann ("Mann"), another employee who had the ability address the concerns with Mr. Hayes. Mann told Plaintiff she never sits or stands on the same side of the desk as Mr. Hayes because of his inappropriate touching. However, nothing was done to address Plaintiff's concerns.

22. Additionally, in January 2016, because Plaintiff was so stressed about Mr. Hayes's behavior in the office, she reached out to Mr. Hayes's pastor, who came to the office once a week to meet with Chris for bible study. Plaintiff reported her concerns about Mr. Hayes's sexually inappropriate comments, actions and behaviors at to the office to the pastor, who said he would speak with Mr. Hayes about Plaintiff's concerns.

23. A few days went by, and Plaintiff decided it best to try to address her concerns with Mr. Hayes face-to-face.

24. In or around mid- to late-January, 2016, Plaintiff met with Mr. Hayes and expressed her concerns about his inappropriate behavior in touching staff members, talk of sexual relationships with spouses, comments regarding client's appearances, staff reporting they were uncomfortable with his behavior, and staff reporting finding him watching pornography in his office, among other things.

25. At that point in time, the business was growing, there were recently hired new staff, and Hayes Management intended to hire more. Consequently, Plaintiff expressed concern that Mr. Hayes's behavior needed to stop for the sake of current staff as well as new staff. Mr. Hayes acknowledged he had a problem and said he would try to "be more careful."

26. After the conversation, things slightly improved for a short time, but then Mr. Hayes returned to his behavior.

27. Plaintiff's office was moved to the other side of the building, where she did not see Mr. Hayes as frequently. However, Mr. Hayes continued to sexually harass Plaintiff when he came over to Plaintiff's side of the building, and would try to kiss and touch Plaintiff. Plaintiff tried to ignore his conduct and keep working.

28. In or around May 2017, after Plaintiff returned from a vacation, and had been away from the sexually-charged work environment, she realized she could not continue to work for Hayes Management anymore due to Mr. Hayes's sexual advances and behaviors. Mr. Hayes's actions continued, and he propositioned Plaintiff to have an affair with him. Plaintiff continued to refuse his advances.

29. In or around July 2017, Plaintiff provided notice to Hayes Management that she would only be working 20 hours per week and intended to leave employment with Hayes Management. Plaintiff did so because she could no longer put up with Mr. Hayes's sexual harassment and the hostile work environment.

30. In or around August 2017, Plaintiff expressed concerns about Mr. Hayes's sexual advances and inappropriate sexual behavior toward Plaintiff and the staff to Hayes Management's attorney, Dru Guthrie ("Guthrie"). Guthrie told Plaintiff they would discuss it further, but never spoke with Plaintiff about it again.

31. On or around August 30, 2017, Plaintiff received an offer to work for another employer. On or around August 31, 2017, Plaintiff went to work as usual for Hayes Management, and intended to inform Mr. Hayes that she had found other employment and was providing her two weeks' notice.

32. Plaintiff was unable to speak with Mr. Hayes that morning. However, she did inform a few staff members that she had found new employment and was putting in her two weeks' notice.

33. Shortly after the lunch hour, Guthrie arrived at Hayes Management's offices and informed Plaintiff he needed to speak with her. He took Plaintiff outside and told her that Mr. Hayes wanted her to leave due to what he claimed was a conflict of interest with Plaintiff being

hired by a former client of Hayes Management. Guthrie also informed Plaintiff that Mr. Hayes was hurt and disappointed Plaintiff was leaving her employment with Hayes Management.

34. Plaintiff informed Guthrie that she could no longer work for Hayes Management because of the constant inappropriate sexual comments and touching in the work environment, and that Guthrie was well-aware of Mr. Hayes's actions.

35. Plaintiff asked to speak with Mr. Hayes, but Guthrie told Plaintiff Mr. Hayes did not want to speak with her. Plaintiff asked Guthrie for a letter stating her employment was being terminated. Guthrie stated he would provide the letter. Plaintiff went into the office to wait for the letter and to gather her personal items.

36. While Plaintiff was waiting for the letter from Mr. Guthrie, a staff member called the police and had Plaintiff escorted off the property.

37. On or around February 23, 2018, Plaintiff dually filed a Charge of Discrimination with the Idaho Human Rights Commission and the Equal Employment Opportunity Commission.

38. On or about April 26, 2019, Plaintiff was issued her Notice of Right to Sue.

39. On or about July 23, 2019, Plaintiff filed her Complaint in this matter. (Dkt. 1).

40. On or about October 28, 2019, Hayes Management filed its Answer and Counterclaim in this action.

41. Hayes Management brought three counterclaims against Plaintiff: one for breach of a covenant not to compete, a second for tortious interference, and a third for punitive damages for oppressive, malicious and outrageous conduct.

42. Hayes Management has not brought any cause of action against any other former employee, even though at least one other employee is performing similar job functions and working in the same current place of employment as Carbajal.

43. The Counterclaims filed against Carbajal by Hayes Management are frivolous, were brought merely for the purpose of harassment and retaliation, and as result of Carbajal pursuing her Title VII claims against Hayes Management.

44. On or about November 15, 2019, Carbajal dually filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Idaho Human Rights Commission associated with Hayes Management's harassing and retaliatory Counterclaims.

45. On or about December 4, 2019, Carbajal was issued her Notice of Right to Sue with regard to Hayes Management's harassing and retaliatory Counterclaims.

46. Plaintiff has exhausted her administrative remedies.

47. On or about January 29, 2020, Plaintiff filed her Amended Complaint and Demand for Jury Trial in this matter. (Dkt. 30).

48. On or around June 4, 2020, this Court entered an Order finding questions of fact precluded dismissal of Plaintiff's Title VII claims against Hayes Management based Title VII's numerosity requirement.

49. On or around June 18, 2020, Hayes Tax filed articles of incorporation with the Idaho Secretary of State.

50. The registered agent for Hayes Tax listed on its articles of incorporation is Hayes Management Services, Inc.

51. The President of Hayes Tax is Melissa Galles, who is Mr. Hayes's daughter. The Vice President of Hayes Tax is Brandy Mann, who was the office manager for Hayes Management.

52. Both Melissa Galles and Brandy Mann participated in preparing statements to respond to Plaintiff's Charge of Discrimination, and were therefore aware of Plaintiff's claims. Brandy Mann also submitted an affidavit in this action (Dkts. 8-1 & 9).

53. On or around December 31, 2020, Mr. Hayes executed an Asset Purchase Agreement ("Agreement") on behalf of Hayes Management, selling what appears to be most, if not all, of Hayes Management's assets, including its good will and client list, to Hayes Tax.

54. Hayes Management did not include its liabilities as part of the transaction and the Agreement was silent as to this litigation, including its counterclaims.

55. On information and belief, the amount paid by Hayes Tax for Hayes Management's assets was below fair market value. Hayes Management paid nearly double the amount paid for its assets in wages alone to its employees in 2016. (Dkt. 44, at 9).

56. On information and belief, Hayes Management is now defunct, and has insufficient assets to be able to cover a potential judgment in favor of Plaintiff in this case.

57. On information and belief, Chris has distributed any proceeds from the sale of Hayes Management's assets to himself, personally, or earmarked those proceeds for matters other than paying any potentially liability in this litigation.

58. Hayes Tax is a continuation of and/or successor in interest to Hayes Management in that the principal office of both companies is identical, and both companies engage in the same business with the same or substantially similar assets and employees.

59. Therefore, Hayes Tax is either merely a continuation of Hayes Management or the product of a fraudulent transfer entered into in order to escape potential liability.

60. Chris is the alter ego of Hayes Management. There is a unity of ownership and interest such that Chris has no separate personality from Hayes Management, and if Chris is not treated as the alter ego of Hayes Management an inequitable and unjust result would occur. Further, if Chris is not treated as the alter ego of Hayes Management, Chris and Hayes Management's actions would constitute an abuse of the corporate privilege.

<u>**COUNT ONE**</u>
<u>**VIOLATION OF TITLE VII/IDAHO HUMAN RIGHTS ACT**</u>
**(Sexual Harassment/Hostile Work Environment)**

61. Plaintiff realleges and incorporates by reference paragraphs 1 through 60 as though fully set forth herein.

62. Plaintiff is female and therefore belongs to a protected class under Title VII of the Civil Rights Act and the Idaho Human Rights Act.

63. Plaintiff was subjected to unwanted comments and touching while at work, including sexual comments, sexual advances, grabbing, groping, and attempted kissing.

64. Such conduct was unwelcome.

65. Such conduct was based upon Plaintiff's sex.

66. Such conduct was so severe and pervasive as to alter the terms and conditions of Plaintiff's employment and create a sexually abusive and hostile work environment.

67. Plaintiff perceived the work environment to be abusive, hostile, and/or offensive.

68. A reasonable woman in Plaintiff's circumstances would consider the working environment to be abusive, hostile and/or offensive.

69. Plaintiff was required to acquiesce to such conduct in order to keep her employment. Consequently, Plaintiff suffered a tangible employment action as a result of the hostile work environment.

70. As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has suffered and will continue to suffer loss of earnings, benefits, and job opportunities, as well as emotional distress consisting of outrage, shock, and humiliation. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to her.

71. Defendants' conduct was willful or done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT TWO
## VIOLATION OF TITLE VII/IDAHO HUMAN RIGHTS ACT
**(Retaliation)**

72. Plaintiff realleges and incorporates by reference paragraphs 1 through 71 as though fully set forth herein.

73. Plaintiff engaged in a protected activity under Title VII and the Idaho Human Rights Act when she reported Chris's sexual harassment and the hostile work environment in which she worked.

74. Plaintiff was subject to adverse employment actions as a result of her protected activity.

75. Plaintiff was subject to additional adverse actions by Defendants after pursuing her remedies under Title VII and the Idaho Human Rights Act, such as Defendant filing frivolous counterclaims against her in this action.

76. Defendants discriminated against Plaintiff and/or retaliated against Plaintiff due to her engaging in protected activity.

77. As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has suffered and will continue to suffer loss of earnings, benefits, and job opportunities, as well as emotional distress consisting of outrage, shock, and humiliation. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to her.

78. Defendants' conduct was willful or done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT THREE
## SUCCESSOR LIABILITY

79. Plaintiff realleges and incorporates by reference paragraphs 1 through 78 as though fully set forth herein.

80. By virtue of Hayes Tax entering into the Agreement and purchasing Hayes Management's assets, one of the following applies:

    a. Hayes Tax expressly or impliedly agreed to assume Hayes Management's obligations; or

    b. Hayes Tax is merely a continuation of Hayes Management; or

    c. The sale of Hayes Management's assets to Hayes Tax was done for Hayes Management to escape liability in this matter.

81. There is continuity in operations between Hayes Management and Hayes Tax.

82. Prior to entering into the Agreement, Hayes Tax had notice of Hayes Management's legal obligations and potential liability in this litigation.

83. Hayes Management cannot provide adequate relief for a potential judgment in favor of Plaintiff because it discontinued its normal business operations and sold its assets.

84. Based upon the foregoing, Hayes Tax is a successor of Hayes Management and is subject to successor liability and is liable for all damages awarded to Plaintiff and assessed against Hayes Management in this litigation.

## COUNT FOUR
## ALTER EGO LIABILITY

85. Plaintiff realleges and incorporates by reference paragraphs 1 through 84 as though fully set forth herein.

86. There is a unity of interest and ownership between Hayes Management and Mr. Hayes such that the separate personalities of the corporation and Mr. Hayes no longer exist.

87. If the acts of Hayes Management are not treated as the acts of Mr. Hayes, individually, an inequitable result would follow.

88. Based on the foregoing, pursuant to the alter ego theory of liability, Mr. Hayes is an alter ego of Hayes Management and is liable for all damages awarded to Plaintiff and assessed against Hayes Management in this litigation.

## COUNT FIVE
## CONSTRUCTIVE TRUST

89. Plaintiff realleges and incorporates by reference paragraphs 1 through 88 as though fully set forth herein.

90. When Hayes Management entered into the Agreement with Hayes Tax, Hayes Management, Hayes Tax and Mr. Hayes obtained legal title to property under circumstances otherwise rendering it unconscionable for Hayes Management, Hayes Tax,

and Mr. Hayes to retain beneficial interest in the assets subject to the Agreement and the proceeds resulting from the Agreement.

91. Based upon the foregoing, a constructive trust must be imposed over the assets subject to the Agreement and the proceeds resulting from the Agreement in order to ensure that sufficient assets are available to satisfy any damages awarded to Plaintiff in this action.

## ATTORNEYS' FEES

92. As a further and direct result of Defendants' actions and/or failure to act, Plaintiff has been compelled to retain the services of counsel and has incurred, and will continue to incur, costs and attorneys' fees. Plaintiff is therefore entitled to attorneys' fees and costs incurred in pursuing this action pursuant to 42 U.S.C. § 1981(b) and 42 U.S.C. § 2000e-5(k).

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

Plaintiff seeks the judgment of the Court against Defendants as follows:

1. For general and compensatory damages, and all other statutorily available damages, in an amount to be proven at trial;
2. For any equitable remedies available to her;
3. For punitive damages;
4. For statutorily available costs and attorneys' fees;
5. For the imposition of a constructive trust;
6. For prejudgment interest on all amounts claimed; and
7. For such other and further relief as the Court deems just and proper.

DATED this 7th day of June, 2021.                              /s/
                                                                    Amanda E. Ulrich, Esq.
                                                                    Casperson Ulrich Dustin PLLC