John Simmons ISB3156
John Simmons JD LLM Prof Co
796 Memorial Drive
Idaho Falls ID 83402
208 528 9901
johnsimmonslaw@gmail.com

Attorney for Defendant, Hayes
 Management Services, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIA ANGELICA "ANGIE" CARBAJAL,<br>    Plaintiff,<br>vs.<br><br>HAYES MANAGEMENT SERVICE, INC.;<br>HAYES TAX & ACCOUNTING SERVICES,<br>INC.; and CHRIS HAYES,<br>    Defendants. | Case No. 4:19-cv-00287-BLW<br><br>**HAYES MANAGEMENT'S BRIEF OPPOSING CARBAJAL'S MOTION FOR SUMMARY JUDGMENT DKT #130** |
| HAYES MANAGEMENT SERVICE, INC.,<br>    Counter-claimant,<br>vs.<br><br>MARIA ANGELICA "ANGIE" CARBAJAL,<br>    Counter-respondent. | |

Hayes Management Services, Inc. (the captioned defendant and counter-claimant) submits this brief opposing Carbajal's Motion for Summary Judgment…Dkt 130.

Procedurally, the Motion is late. On 2.11.2022, the Court (Dkt 89) extended the discovery deadline to 30 days after the Court would rule on Hayes Management's motion for a protective order and dispositive motions deadline to 30 additional days after the discovery deadline.  The Court decided the protective order motion on 7.21.2022 (Dkt 115).  The discovery deadline became thus 8.20.2022, and the dispositive motion deadline became 9.19.2022. Carbajal's motion for summary judgment, a dispositive

motion, was not filed until 9.21.2022. For that reason, the Court ought to deny the motion.

Substantively, Carbajal mistakenly equates the lack of a fixed term for the duration of employment as there being no contract. Other terms of the employment nonetheless are **contractual** between the employee and the company. The lack of a fixed term (or limits on discharge) merely means that the arrangement is at-will, in turn meaning that the contractual arrangement—employment—may be terminated at any time by either party to that contract, the employee or the company. It is upon this mistaken precipice that Carbajal then leaps to the argument that Hayes Management's Rules of Conduct "are nothing more than Hayes Management's employment practices." (p7 of Dkt 130-1). Carbajal so argues in an attempt to be relieved of the written covenants she signed when taking the job, to wit: "I acknowledge that I have read, understand <u>and agree to</u> the foregoing General Rules of Conduct and a copy of the rules has been provided to me. Employee Signature: /s/Maria Carbajal  Date: 01/19/12". Underlining added. (Carbajal "does not dispute that she received and signed the Rules of Conduct" that are Dkt 6-2. Page 2 of her Memorandum in Support of Motion for Summary Judgment Regarding Hayes Management's Counterclaims.)

Employment is formed by one party, usually the employee, accepting the offer of the other, usually the company—forming a contract. The seminal case in Idaho jurisprudence about at-will employment arrangements is conveniently ignored by Carbajal. In *Metcalf v Intermountain Gas Company*, 116 Idaho 622, 644-45, 778 P2d 744, 746-47 (1989), the former employee sought breach of employment contract, among other things. The trial court granted Intermountain Gas partial summary judgment on the breach of employment contract issue. Even though there was no express provision that limited the reasons for terminating the employment contract or specifying its duration for any time period, the Idaho Supreme Court reversed. It is clear from the *Metcalf* opinion

that employment arrangements are, in Idaho at least, contractual in nature, whether there is a signed document or not. The Idaho Supreme Court explained (underlining added):

> We agree with the district court that there is no substantial evidence of an express contract provision precluding the employer from dismissing Metcalf "at will." However, <u>viewing the entire record, including the Personnel Manual and Employee Handbook, we conclude that there is a triable issue of fact regarding whether there was an implied-in-fact contractual agreement</u> that Metcalf's employment would not be terminated or reduced because of her using the accumulated sick leave which both parties agree was <u>part of the oral employment contract</u>.
>
> As the result of numerous decisions of this Court in recent years, it is now settled law in this state that:
>
>> Unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party and the employer may terminate the relationship at any time for any reason without incurring liability. *MacNeil v. Minidoka Memorial Hospital,* 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v. Minidoka Irrigation Dist.,* 98 Idaho 330, 563 P.2d 54 (1977).
>
> *Spero v. Lockwood, Inc.,* 111 Idaho at 75, 721 P.2d at 175 (1986). Thus, in the absence of an agreement between the employer and the employee limiting the employer's (or the employee's) right to terminate the contract at will, <u>either party to the employment agreement</u> may terminate the relationship at any time or for any reason without incurring liability. *MacNeil v. Minidoka Memorial Hospital,* 108 Idaho 588, 701 P.2d 208 (1985). However, such a limitation on the right of the employer (or the employee) to terminate the employment relationship "can be express or implied." *Harkness v. City of Burley,* 110 Idaho 353, 356, 715 P.2d 1283, 1286 (1986). A limitation may be implied if, from all the circumstances surrounding the employment relationship, a reasonable person could conclude that both parties intended that the employer's (or the employee's) right to terminate the employment relationship-at-will had been limited <u>by the implied-in-fact agreement of the parties</u>. *See, e.g., Spero v. Lockwood, Inc.,* 111 Idaho 74, 721 P.2d 174 (1986); *Wagenseller v. Scottsdale Mem. Hospital,* 147 Ariz. 370, 710 P.2d 1025, 1036 (Ariz. 1985) (*en banc*) ("<u>An implied-in-fact contract term ... is one that is</u>

inferred from the statements or conduct of the parties."); 1 A.Corbin, § 17, at 38 (1960).

This Court has recognized that "[a]n employee's handbook can constitute an element of the contract." *Harkness v. City of Burley,* 110 Idaho 353, 356, 715 P.2d 1283, 1286 (1986); *Johnson v. Allied Stores Corp.,* 106 Idaho 363, 679 P.2d 640(1984). Unless an employee handbook specifically negates any intention on the part of the employer to have it become apart of the employment contract, a court may conclude from a review of the employee handbook that a question of fact is created regarding whether the handbook was intended by the parties to impliedly express a term of the employment agreement. *Spero v. Lockwood, supra; Harkness v. City of Burley, supra; Johnson v. Allied Stores Corp., supra; Wagenseller v. Scottsdale Mem. Hospital, supra.*

In the present case the employee handbook was silent on the question of whether the terms and employee benefits set out in the handbook affected or otherwise modified the employer's right to terminate the employment relationship at will.[Fn. omitted] Accordingly, we conclude, after considering all the circumstances of this case, that a material issue of fact exists regarding whether, by providing for accumulated sick leave benefits, the employer impliedly agreed with the employee that the employment relationship would not be terminated or the employee penalized for using the sick leave benefits which the employee had accrued. "The trier of fact must determine whether 'a contract existed between the parties by virtue of the ...policy manual.'" *Harkness v. City of Burley,* 110 Idaho at 356, 715 P.2d at 1286.

It is obvious from the *Metcalf* decision that in Idaho, employment arrangements are contractual, and the terms of which can be express or implied, if express such can be oral or as might be embodied in a writing. It bears repeating, Carbajal signed the General Rules of Conduct right below where it provides: "I acknowledge that I have read, understand and agree to the foregoing General Rules of Conduct… ."

Hayes Management does not dispute that the employment contract with Carbajal was at-will. There was no express provision—oral or documented—for nor implication from the circumstances for the duration to be a time certain. Whenever Hayes Management might have changed its Rules of Conduct, Carbajal like any other at-will

employee chose either to discontinue working under the new rules or to continue, and thereby impliedly agreeing going forward to whatever changes may have been made by Hayes Management to those Rules of Conduct. Essentially, Hayes Management would have been offering only to continue the at-will employment contract on the new revised terms.  By continuing to work for Hayes Management after notification of the revisions, Carbajal was by implication agreeing thereto—and thus the employment continued on those modified terms..

Hayes Management respectfully submits that the Court should deny the requested summary judgment to the extent requested by Carbajal that (a) there was no contract, and (b) the Rules of Conduct are not part of her employment contract.

Carbajal next assails the Non-Compete Agreement, Dkt 6-3, which she "does not dispute that she received and signed". Page 2-3 of her Memorandum in Support of Motion for Summary Judgment Regarding Hayes Management's Counterclaims. Carbajal insists that the Non-Compete Agreement does not require her to do or not to do anything. Despite entitled and in the body repeatedly referred to as an agreement, one between Hayes Management and Carbajal, Carbajal asks that Court to treat it as something else, perhaps a nullity, despite her as a party having "executed this agreement" by her signature. The Non-Compete Agreement does couch many of its restrictive provisions as being the intent or purpose of this agreement.  It includes "The directive of this agreement is to stop a former employee of HMS from…trying to solicit HMS customers." It includes a liquidated damages provision for "[a]n employee who fails to comply with this non-compete agreement…in violation of the terms set herein <u>and agreed upon</u>". (Underlining added.)

In Idaho, a court is to construe the whole of a written instrument and give meaning to all provisions of the writing to the extent possible. *See Magic Valley Radiology, P.A. v. Professional Business Services, Inc.,* 119 Idaho 558, 565, 808 P.2d 1303, 1310

(1991). *Idaho Power Co. v. Cogeneration, Inc*. 134 Idaho 738, 748, 9 P.3d 1204, 1214 (2000).

> When interpreting the contract, we determine the intent of the contracting parties at the time the contract was entered into and do so by viewing the contract as a whole. [*Lamprecht v. Jordan, LLC,* 139 Idaho 182, 185, 75 P.3d 743, 746 (2003).]

*Bybee v Isaac*, 145 Idaho 251, 178 P3d 616 (Id.S.Ct. 2008), regarding a covenant not to compete. See also *Rutter v McLaughlin*, 612 P2d 135, 136 (Id.S.Ct. 1980) ("The contract must be read as a whole to ascertain the intent of the parties. *Minidoka County, for the use and benefit of Detweiler Bros., Inc. v Krieger*, 88 Idaho 395, 399 P2d 962 (1964)").

A review of the Non-Compete Agreement leaves no question about its purpose and provisions. Carbajal signed it on 1.19.2012, as she undertook employment. Carbajal signed the Non-Compete Agreement as part of taking employment, there was consideration (employment, and the earnings she would make). Yet, she wants to skirt the burdens despite having received the benefits of her bargain.  It's mere sophistry for her now to try to tap-dance around and impeach it, and demonstrates a lack of good faith and fair dealing.

Carbajal also tries to skirt her duties of good faith and fair dealing.  Back to the *Metcalf* decision of the Idaho Supreme Court, even if an "employment relationship" were not a contract (it is), it was made clear that "it is the opinion of [the Idaho Supreme] Court today [1989] that in employer-employee relationships (as distinguished from principal-agent (independent contractor) relationships, *Clement v Farmers Exchange*[. 115 Idaho 298, 766 P2d 768 (1988)]) we should adopt an implied-in-law covenant of good faith and fair dealing (the covenant) as hereinafter outlined." *Metcalf*, 778 P2d at 748. The *Metcalf* court also found that "the covenant is implied in *contracts*." *Id.* The Idaho Supreme Court continued, "the covenant protects the parties' benefits in their employment contract or relationship, and that any action which violates, nullifies or significantly impairs any benefit or right which either party has in the employment

contract, whether express or implied, is a violation of the covenant". *Metcalf*, 778 P2d at 749.  The Idaho Supreme Court quoted, for rationale, from *Wagenseller v Scottsdale Memorial Hospital*, 147 Ariz 370, 710 P2d 1025 (Ariz 1985) (*en banc*) where the Arizona Supreme Court "recognize[d] an implied covenant of good faith and fair dealing in the employment-at-will contract", while rejecting the argument that no cause terminations would breach the covenant "in an at-will contract"—otherwise, it would be "contrary to the bargain in an at-will contract." *Metcalf*, 778 P2d at 749.

The "amorphous concept of bad faith" is not necessary.  "Any action by either party which violates, nullifies or significantly impairs any benefit of the employment contract is a violated of the implied-in-law covenant." *Metcalf*, 778 P2d at 749. Yet Carbajal, by her motion, takes action to nullify and significantly impair Hayes Management's benefit of the employment contract and the Non-Compete Agreement.  Not only due to the breach of her Non-Compete Agreement made with Hayes Management by soliciting clients away from it, but also by her motion has taken action that is in derogation of the benefit of Hayes Management's bargain.

Next, Carbajal tries to argue that Hayes Management's claim for tortious interference with prospective economic damages should be dismissed pre-trial, by summary judgment.  She claims that there can be no 'valid economic expectancy' that Hayes Management's other at-will employees would stay employed or remain as productive as before she interfered with them.  Carbajal cites only case law that specifies that the expectancy must be more than a hope or wish.  She does not present evidence and/or argument that precludes such—well, at least none apart from her unsubstantiated, conclusory arguments.  She claims that productivity of staff is not quantifiable.  That ignores, if not impugns, the entire industry of human resources and the numerous metrics used to measure employee productivity.  Carbajal insists that since Hayes Management can dismiss other at-will employees, it could have no ascertainable damages—ignoring the cost to an employer to replace and train up a new employee to fill a position.

Carbajal claims that because each client would have the choice of migrating to ADP (the company that purchased the payroll business from Hayes Management in August 2017) and remain with ADP for 90 days in order for ADP to owe Hayes Management anything by reason of such transitioned payroll client, there is no valid economic expectancy—there are just "too many intervening events [that] had to occur in order for Hayes Management to be paid under the ADP contract." That is a decision for a jury to make. Carbajal asks the Court to ignore the fact that she stole Hayes Management clients, contrary to the Non-Compete Agreement, dismissing her breach of that covenant as "nothing more than normal business competition." Despite Carbajal's insinuations, the Idaho Supreme Court found that clientele could be the object of tortious interference with a prospective economic relationship. *Downey Clinic v Nampa Restaurant Corp.*, 127 Idaho 283, 900 P2d 191 (Id.S.Ct. 1995), involving a chiropractic client.

ADP did not have to withdraw its offer to Hayes Management for there to be intentional interference, as Carbajal suggests. It was not ADP that Hayes Management claims that Carbajal induced to withdraw from Hayes Management, but Hayes Management's payroll clients away from the transition to ADP, and thereby diminished the number that transitioned to ADP and thus for which ADP paid Hayes Management.

And for there to be wrongfulness beyond the mere fact of interfering with those payroll clients and their transition to ADP, such interference was contrary to the covenant that Carbajal made by signing the Non-Compete Agreement and a breach of such agreement. Therein lies the wrongfulness factor. Carbajal could have pursued her new employment with Pearl Professional Services without stealing clients; she could have undertaken the Pearl employment without having to break her covenant not to pilfer Hayes Management's clients. Had she refrained from doing so as she agreed by the Non-Compete Agreement, she would have been free to provide payroll and accounting services for those clients of Pearl Professional Services which were not lured away by Carbajal. That is not the case here. Here, she breached the covenants she made.

Finally, the claim for punitive damages is not here stand alone. It is attendant to both the breach of contract claims and the tortious interference claim.

It is clear that there is no traction, legally speaking, to any of Carbajal's arguments for summary judgment on Hayes Management's counterclaims against Carbajal.  Hayes Management asks the Court to deny her Motion in its entirety.

*John Simmons* (signature)

DATED: 2022-10-04

John Simmons