UNITED STATES DISTRICT COURT

IN THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIA ANGELICA "ANGIE" CARBAJAL,<br><br>        Plaintiff,<br><br>    v.<br><br>HAYES MANAGEMENT SERVICE, INC.; HAYES TAX & ACCOUNTING SERVICES, INC.; and CHRIS HAYES,<br><br>        Defendants. | Case No. 4:19-cv-00287-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |
| HAYES MANAGEMENT SERVICE, INC.,<br><br>        Counterclaimant,<br><br>    vs.<br><br>MARIA ANGELICA "ANGIE" CARBAJAL,<br><br>        Counter-respondent. | |

**INTRODUCTION**

Hayes Management has requested that Carbajal submit to a mental

examination in the form of a psychosexual examination (Dkt. 116). Because the

Court finds that that Hayes Management's request that the mental examination take

the form of a psychosexual examination – an examination reserved for criminal
defendants convicted of sexual offenses – was not substantially justified, the Court
will not only deny Hayes Management's request for a psychosexual examination
but will also award Carbajal's attorney fees in responding to the motion.

## BACKGROUND

Plaintiff Maria Angelica "Angie" Carbajal alleges that Defendant Hayes
Management Service, Inc.'s president and owner, Chris Hayes, sexually harassed
her and subjected her to a hostile work environment, and then retaliated against her
for filing this action, in violation of Title VII of the Civil Rights Act of 1964 and
the Idaho Human Rights Act.[1] Carbajal requests damages on various grounds,
including compensatory damages for losses resulting from "emotional distress
consisting of outrage, shock, and humiliation." *Sec. Am. Compl.* ¶¶ 70, Dkt. 79.

In September 2020, Hayes Management requested that Carbajal submit to a
psychosexual evaluation "given the nature of her allegations and her behaviors
while an employee of Hayes Management Services, Inc." *Simmons Decl.* ¶ 4, Dkt.
116-2. Carbajal objected to the request, explaining: "there is no basis for a psycho-
sexual evaluation of Ms. Carbajal in this case. That is completely inappropriate
here. As you and your client are likely aware, psychosexual examinations are used

---

[1] Carbajal amended her Complaint, adding as defendants, Chris Hayes, individually, based on alter-ego liability, and Hayes Tax & Accounting Services, Inc. based on successor liability, and a claim for constructive trust against all Defendants. *Sec. Am. Compl.*, Dkt. 79

in criminal actions regarding sex offenders, typically to determine whether they will reoffend. Obviously, we would object to any attempt to subject Ms. Carbajal to any such exam as there is no basis for that in this civil case as to Ms. Carbajal." *Simmons Decl.* ¶ 5, Dkt. 116-2.

In response to Carbajal's objection, Hayes Management explained that it sought the psychosexual evaluation "to establish Ms. Carbajal's sensitivity levels vis–à–vis the average woman." *Simmons Decl.* ¶ 6, Dkt. 116-2. Hayes Management further explained, "[a]s both Carbajal's subjective and objective women sensitivity to a work environment are placed at issue by Ms. Carbajal's complaint, invoking Title VII, this is quite relevant." *Id.* Not convinced, Carbajal continued to object to the request, and Hayes Management apparently dropped the issue until Carbajal made her expert disclosure in April 2021.

On April 2, 2021, Carbajal disclosed Christine Buxton of Snake River Counsel as an expert witness. Buxton provided a report in which she opines that Carbajal "has struggled immensely with her past employment" and prior to her termination, "she was dealing with multiple symptoms including, racing and unwanted thoughts, irritability, fatigue, worry, depressed mood, feelings of hopelessness, powerlessness, as well as bouts of insomnia." *Pl's Expert Report,* p. 1, Dkt. 116-3. Buxton further noted that Carbajal "felt trapped and confused at her place of employment and was entangled psychologically with unhealthy

expectations coming from her boss and others at work," and these issues led to "…highly negative repercussions on [Carbajal's] physical, and mental health, and her family." *Id.*

Believing Carbajal had placed her mental condition and status at issue through Ms. Buxton's report, Hayes Management renewed its request that Carbajal "be examined by our expert for a psychosexual evaluation, as such was explained to pertain to the subjective element of her claimed offense taken by the alleged 'hostile environment' and specifically, Chris Hayes' conduct." *Simmons Decl.* ¶ 8; Attachment B, Dkt. 116-4. Hayes Management's counsel again asked plaintiff's counsel whether Carbajal would agree to the request or whether he would have to contact the law clerk in accordance with the Court's discovery dispute process. *Id.*

Carbajal again objected to Hayes Management's renewed request for a psychosexual evaluation on the same grounds she previously asserted – that she "was the victim of sexual harassment and a sexually hostile work environment" and "is not a sex offender, nor has there ever been any allegation as such, and this is not a criminal action." *Simmons Decl.* ¶ 10; Attachment D, Dkt. 116-6. Carbajal also objected on timeliness grounds given that the discovery deadline was set for June 2021, and Hayes Management's expert disclosure deadline had already passed. *Id.* Hayes Management once more appeared to drop the request .

In December 2021, however, Hayes Management renewed the request a third time after an Amended Case Management Order was entered in August 2021, extending Hayes Management's expert disclosure deadline to February 18, 2022, and the discovery deadline to March 16, 2022. *Am. Case Management Order,* Dkt. 87.[2] In renewing its request, Hayes Management's counsel asked Carbajal's counsel to provide dates that Carbajal "would be available for independent examination by our expert, Shelly Osborne, pursuant to Federal Rules of Civil Procedure 35." Hayes Management did not explain the purpose of the request. *Simmons Decl.* ¶ 10; Attachment E, Dkt. 116-7.

Carbajal's counsel responded, stating that she did not believe that "the deadlines were reopened for additional discovery or new expert deadlines for Hayes Management," and reiterating that Carbajal would not agree to a psycho-sexual examination. *Simmons Decl.* ¶ 10; Attachment F, Dkt. 116-8. Hayes Management's counsel claims it then attempted to call plaintiff's counsel later that

---

[2] The scheduling order was amended after Carbajal was allowed to amend her Complaint after learning that Hayes Management had sold its assets to Hayes Tax & Accounting Services, Inc., owned by Chris Hayes' daughter and Hayes Management's longtime employee. The Second Amended Complaint named Hayes Tax as a defendant based on successor liability and Chris Hayes as defendant based on alter ego liability, and added a constructive trust claim against all defendants. These new claims introduced questions into this litigation of whether Hayes Management, through Chris Hayes, sold all of Hayes Management's assets for an unreasonably low purchase price, with the purpose of leaving Hayes Management an empty-shell company and hiding its assets to avoid any potential judgment in Carbajal's favor. *See Memorandum Decision and Order,* p. 13-15, Dkt. 78. Discovery was reopened to allow the parties to explore these new issues.

same day, but Carbajal's counsel has no record of the call. *Casperson Decl.* ¶¶ 4-5, Ex. 1, Dkt. 119-1. Hayes Management did not pursue the matter further.

Nearly two years after making its initial request for Carbajal to undergo a psychosexual examination and five months past the extended expert disclosure deadline, Hayes Management raised the issue a fourth time – this time in response to Carbajal's motion for terminating sanctions against Hayes Management and Chris Hayes, arising from their conduct in discovery relating to the sale of Hayes Management in the middle of this litigation. *Hayes Management Resp. to Sanctions Mot.*, p. 6, Dkt. 108. In its response brief to the motion for terminating sanctions, Hayes Management criticized Carbajal for refusing to "present for a psycho-sexual exam or any IME even though Title VII requires that she prove both objectively and *subjectively* that the conduct/work environment was offensive," and then having the "audacity to trouble the Court, asking for sanctions because all that Hayes Management did was provide exactly what she asked for—nothing more, nothing less."[3] *Id.* (emphasis in original).

At oral argument on the motion for terminating sanctions, the Court cautioned Hayes Management about raising Carbajal's alleged discovery violations

---

[3] Notably, the Court found that both Hayes Management and Chris Hayes engaged in discovery abuse violations in responding to Carbajal's discovery requests regarding the sale of Hayes Management to Hayes Tax, noting that Carbajal had "presented substantial and compelling evidence that demonstrates serious misconduct by Hayes Management and Hayes in this case." *Memorandum Decision and Order re Sanctions*, p. 29, Dkt. 115. The Court further noted that "Hayes Management and Hayes deliberately withheld relevant and discoverable evidence in this case and outright lied or misled Carbajal and the Court about the existence of the withheld documents." *Id.*

as a defense to Hayes Management's own discovery violations. The Court instructed defense counsel to follow the Court's discovery dispute process and contact Court staff to schedule an informal discovery dispute conference if it sought to raise any discovery issues. In July 2022, counsel for Hayes Management did just that, contacting Court staff regarding Carbajal's refusal to submit to a psychosexual exam. For its informal position statement provided to Court staff in accordance with the Court's discovery dispute process, Hayes Management submitted a draft "Brief for Motion to Compel Plaintiff." In the draft brief, Hayes Management did not cite Rule 35 as a basis for requesting the psychosexual examination. Instead, Hayes Management argued – as it had all along – that Title VII requires a plaintiff to show that the allegedly hostile work environment is both objectively and *subjectively* offensive, and therefore Carbajal's "subjective perceptions are at issue" and "it is certainly appropriate that Plaintiff be ordered to submit to examination by [its expert]."

  After initially scheduling an informal discovery dispute process with the Court, the Court requested that Hayes Management instead file a formal motion and further indicated that the Court would decide the issue on the papers. In compliance with this request, Hayes Management filed its Motion to Compel Plaintiff to Submit to IME (Dkt. 116), currently pending before the Court. In its formal motion, Hayes Management seeks a psychosexual examination of Carbajal

on the grounds that she has asserted a hostile work environment claim under Title VII, which has a subjective component, and, for the first time, argues it requires an independent mental examination ("IME") under Federal Rule of Civil Procedure 35 because Carbajal alleges more than a "garden-variety" emotional distress claim.

Carbajal opposes the motion, arguing that Hayes Management's request for a psychosexual IME "should be barred for untimeliness, failure to meet and confer, and as an abusive litigation tactic." *Pl's Resp. Br.*, p. 2, Dkt. 119.

## ANALYSIS

### 1. Federal Rule of Civil Procedure 35

Federal Rule of Civil Procedure 35 authorizes the court to compel a party to submit to a mental or physical examination if the party requesting the evaluation establishes (1) the party's mental condition is "in controversy" and (2) "good cause" exists for the evaluation. *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964). These requirements "are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id.* at 118.

"Good cause" generally requires a showing of specific facts justifying discovery. Factors that courts have considered include, but are not limited to, the

possibility of obtaining desired information by other means, whether plaintiff plans to prove his claim through testimony of expert witnesses, whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional distress. *See, e.g., Turner v. Imperial Stores*, 161 F.R.D. 89, 97-98 (S.D.Cal.1995) (expert testimony); *Schlagenhauf*, 379 U.S. at 118-119 (availability by other means).

Even if good cause is shown, it is still within the court's discretion to determine whether to order an examination. *Stinchcomb v. United States*, 132 F.R.D. 29, 30 (E.D.Pa.1990); *Williams v. Troehler*, 2010 WL 121104, at *4 (E.D.Cal. Jan.7, 2010) ("even if good cause is shown, it is still within the court's discretion to determine whether to order an examination."). Although the rule is to be construed liberally to allow the examination, the court must consider the interest of the party to be examined in avoiding unnecessary invasion of privacy balanced against the moving party's right to a fair trial. *Curtis v. Express, Inc.*, 868 F. Supp. 467, 468 (N.D.N.Y.1994).

### 2. Psychosexual Evaluation

Hayes Management has requested a court order compelling Carbajal to undergo a "psychosexual evaluation" pursuant to Rule 35. But a psychosexual evaluation is not a run-of-the-mill mental examination allowed under Rule 35. Idaho law defines a "psychosexual evaluation" as "an evaluation that specifically

addresses sexual development, sexual deviancy, sexual history and risk of reoffense *as part of a comprehensive evaluation of an offender*." I.C. § 18-8303(13) (emphasis added). In criminal cases, a court may order an ***offender convicted of a sexual offense,*** such as rape or sexual abuse of a minor, to submit to a "psychosexual evaluation" prior to sentencing and incarceration or release on probation to assess a convicted defendant's "future dangerousness." *See* I.C. § 18-8316 ("Requirement for psychosexual evaluations upon conviction"). Even in the criminal setting, the Idaho Supreme Court distinguishes a court-ordered psychosexual evaluation from "a 'routine' presentence investigation," defining such an exam as a "critical stage" of litigation and guaranteeing a criminal defendant the right to counsel regarding the decision to submit to such an exam. *Estrada v. State*, 149 P.3d 833, 837 (2006).

Yet, Hayes Management asks the Court to order Carbajal – a *plaintiff in a civil case alleging she is a victim of sexual harassment* – to undergo this highly intrusive and personal evaluation intended to ferret out a convicted sex offender's future dangerousness. Hayes Management's request not only demonstrates a gross misapprehension of Title VII law and Rule 35 but borders on being abusive and harassing.

Hayes Management insists it needs a psychosexual evaluation of Carbajal because she has placed her "subjective perceptions" at issue by alleging a hostile

work environment under Title VII, which "requires that a claimant prove not only that the complained-of conduct offend a reasonable woman (objective offense) but also that the complainant specifically (subjective offense)." *Def's Br.*, p. 7, Dkt. 116-1. Although never clearly articulated, Hayes Management seems to suggest it requires a psychosexual examination of Carbajal to establish that Chris Hayes' advances and other allegedly harassing conduct were not subjectively offensive to Carbajal. Not surprisingly, Hayes Management fails to cite *a single case* where a court has ordered a mental examination, much less a psychosexual evaluation, of a plaintiff in a Title VII case for purposes of establishing the alleged sexual misconduct was not offensive or unwelcome. Nor did the Court's research reveal such a case.

To the contrary, whether a plaintiff considers an alleged harasser's conduct "unwelcome" under Title VII cannot be determined by her subjective state of mind as discerned through a psychosexual evaluation. *See, e.g., Holmes v. N. Texas Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 543 (N.D. Tex. 2018) ("Whether Hernandez's sexual advances were "unwelcome" under Title VII cannot be determined by Holmes's subjective state of mind."). Rather, the Supreme Court holds that "the correct inquiry is whether [the plaintiff] *by her conduct* indicated that the alleged sexual advances were unwelcome." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986) (emphasis added). Proof that conduct was not

unwelcome may include evidence that the plaintiff sent dozens of sexually explicit emails or texts to her alleged harasser or that she engaged in the same type of *workplace conduct* of which she complains in court. *See, e.g., See, e.g., Holmes*, 304 F. Supp. 3d at 543; *see also Colo v. NS Suppor*t, LLC, No. 1:20-CV-00437-DKG, 2022 WL 2528266, at *6 (D. Idaho July 7, 2022) ("[The defendant] has produced evidence that [the plaintiff] engaged in much of the same conduct of which she complains" in arguing the plaintiff failed to establish she "subjectively viewed [the alleged harasser's] conduct as creating a hostile work environment.").

In *Vinson*, for example, the Supreme Court held that evidence of the plaintiff's provocative speech and dress was relevant in determining whether she welcomed sexual advances from her supervisors. *Id.* at 2407. But, unlike evidence relating to a plaintiff's private sexual behaviors outside the workplace, the evidence of Vinson's past conduct bore directly on her contact with the alleged harasser. Vinson worked with her supervisor daily, and her dress and conversation were relevant in determining whether she welcomed sexual advances from him. Similarly, evidence in this case that Carbajal "initiated regular physical contact with Chris Hayes in plain view of her coworkers," hugging him "daily" and frequently giving him shoulder massages and playing with his hair would be

relevant in determining whether she welcomed sexual advances from him or found his alleged conduct subjectively offensive.[4]

By contrast, the evidence Hayes Management seeks to obtain through a psychosexual exam – Carbajal's "psychology and attitudes especially as such pertain to sex, as evidenced by whatever may be the extent of her sexual conduct," *Def's Reply Br.*, p. 3 – would have little, if any, probative value in determining the welcomeness of Chris Hayes' allegedly harassing conduct. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1105 (9th Cir. 2002), as amended (Feb. 20, 2002). And the probative value of this evidence certainly would not substantially outweigh the prejudice to Carbajal if admitted. *Id.* Such evidence would therefore be inadmissible under Federal Rule of Evidence 412, which forbids the admission of evidence of an alleged victim's "sexual behavior" or "sexual predisposition" in Title VII sexual harassment cases, unless "its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." *Id.* at 1104 (citing Fed. R. Evid. 412(c)(1)(B)).

In *B.K.B.*, the Ninth Circuit discussed this issue in deciding whether the district court erred in refusing to grant plaintiff's motion for a mistrial after

---

[4] In citing the IHRC determination, the Court does not suggest that it would be admissible at trial or even in support of summary judgment. Rather, the Court cites the determination to illustrate the types of proof available to Hayes Management to potentially refute Carbajal's allegations that she was subjected to unwelcome sexual advances and other sexual conduct.

erroneously admitting testimony about the plaintiff's sexual behavior. The
defendants had offered the testimony "to impugn Plaintiff's moral character and
presumably also to establish that sexual advances by [the alleged harasser] and
sexual misconduct at the workplace were not unwelcome." *Id.* But the Ninth
Circuit found that the testimony about the plaintiff's alleged sexual habits, which
failed to recount any admissions by the plaintiff regarding the alleged harasser's
advances, "were not probative as to the welcomeness of any harassing conduct by
her coworkers," and the probative value of the evidence did not substantially
outweigh the prejudice to the plaintiff. *Id.* The Ninth Circuit therefore held that the
district court abused its discretion in refusing to grant a new trial, finding that the
admission of evidence related to the plaintiff's "sexual behavior" substantially
prejudiced the plaintiff and "it was impossible to dispel the effect of [the] lurid and
prejudicial testimony" with a curative instruction. *Id.* at 1106.

The Eighth Circuit, in *Burns v. McGregor Electronic Industries, Inc.*, 989
F.2d 959 (8th Cir. 1993), similarly held that the "plaintiff's choice to pose for a
nude magazine outside work hours [was] not material to the issue of whether
plaintiff found her employer's work-related conduct offensive." *Id.* at 963. "Based
on Burns's past behavior [in posing nude for a magazine] and the district judge's
observation of her at trial, the trial court found that although the sexual advances at
work were considered by Burns to be unwelcome, she would not have been

offended by these advances and by the sexual innuendo from other employees and supervisors." Flatly rejecting this reasoning, the Eighth Circuit explained, "[the plaintiff's] private life, regardless how reprehensible the trier of fact might find it to be, did not provide lawful acquiescence to unwanted sexual advances at her work place by her employer. To hold otherwise would be contrary to Title VII's goal of ridding the work place of any kind of unwelcome sexual harassment." *Id.*

Likewise, in *Wolak v. Spucci*, 217 F.3d 157 (2d Cir. 2000), the Second Circuit found the trial court erred in admitting evidence of the plaintiff's sexual behavior outside work – specifically evidence of the plaintiff's viewing pornography outside the workplace. *Id.* at 160 (cited with approval by *B.K.B*). In that case, the plaintiff, a police officer, alleged she was subjected to a hostile work environment based, in part, by her fellow male officers constantly demeaning her with pornographic and other derogatory postings at the police station. *Id.* The defendant, who was allowed to introduce evidence at trial of the plaintiff's private sexual behavior outside work, including her viewing of pornography, argued "that questions regarding [the plaintiff's] viewing of pornography were relevant to the subjective prong of the hostile work environment test—whether she was actually offended—and to damages." *Id.* The Second Circuit disagreed, finding "the evidence was of, at best, marginal relevance":

> Whether a sexual advance was welcome, or whether an alleged victim in fact perceived an environment to be sexually offensive, does not turn

on the private sexual behavior of the alleged victim, because a woman's expectations about her work environment cannot be said to change depending upon her sexual sophistication.

*Id.*

As these cases show, Hayes Management's argument that it requires a psychosexual evaluation of Carbajal, as a means of probing into her sexual attitudes and private sexual behavior, to determine the subjective offensiveness of Chris Hayes' conduct, grossly misconstrues what constitutes unwelcome sexual harassment. Carbajal's sexual attitudes and sexual behaviors in her private life in a consensual setting do not waive "her legal protections against unwelcome harassment." *Swentek v. USAIR, Inc.*, 830 F.2d 552, 557 (4th Cir. 1987) (citation omitted). Instead, the trier of fact "must determine whether plaintiff welcomed the particular conduct in question from the alleged harasser." *Id. See also Rodriguez–Hernandez v. Miranda–Velez*, 132 F.3d 848, 855–56 (1st Cir. 1998) (upholding the district court's ruling that evidence concerning plaintiff's moral character and the marital status of her boyfriend were inadmissible under Rule 412, while evidence concerning plaintiff's allegedly flirtatious behavior toward the accused harasser was admissible to determine welcomeness).

To allow Hayes Management to subject Carbajal to a psychosexual evaluation to obtain evidence regarding her private sexual behavior or attitudes would not only undermine Title VII's goal of ridding the work place of any kind of

unwelcome sexual harassment but would also undermine the purpose of Rule 412, which is to safeguard "the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." Fed. R. Evid. 412, Advisory Committee Notes to 1994 Amendments. The Court therefore denies Hayes Management's motion to compel a psychosexual evaluation of Carbajal.

### 3.  Mental Health Examination under Rule 35

In filing its formal motion, Hayes Management attempts to recast its request for a psychosexual evaluation as a run-of-the-mill request for an IME pursuant to Rule 35 based on Carbajal's request for emotional distress damages. While no court has ever ordered a psychosexual evaluation, or even an IME, of a plaintiff in a Title VII case to counter claims of unwelcomeness, courts have granted requests for IMEs of plaintiffs alleging more than a "garden-variety" claim for emotional distress. *See Turner*, 161 F.R.D. at 97-98 (collecting cases).

The Court, however, need not delve into whether Carbajal alleges more than a "garden-variety" claim for emotional distress, justifying Hayes Management's request for an IME under Rule 35, because the Court can find neither that Hayes Management timely made the request nor that it met and conferred in good faith with Carbajal on this specific request. Hayes Management's *extended* expert

disclosure deadline passed more than five months ago, in February 2002, prior to its filing its motion to compel an IME. Hayes Management had ample time to raise the issue with the Court prior to the passing of this deadline – in fact, Hayes Management first raised the issue in September 2020, more than a year prior to the extended expert disclosure deadline. Given that Hayes Management did not diligently pursue its request for an IME based on Carbajal's claim for emotional distress and as part of expert discovery, the Court finds it is untimely.

With respect to Hayes Management's meet and confer obligations, not once prior to filing this motion did Hayes Management cite Carbajal's claim for emotional distress as a basis for requesting a mental examination under Rule 35: not in September 2020 when made its first request for a psychosexual evaluation; not in April 2021, when it made its second request for a psychosexual evaluation; not in December 2021, when it made its third request; and not even as recently as July 2022, when it raised the issue in response to Carbajal's sanctions motion or with Court staff. Instead, each time Hayes Management made its request, it r specifically requested a psychosexual evaluation, "as such was explained to pertain to the subjective element of her claimed offense take by the alleged 'hostile environment' and specifically, Chris Hayes' conduct." *Simmons Decl.* ¶ 8, Attachment B. Only once it filed this formal motion to compel did Hayes

Management mention Carbajal's claim for emotional distress to justify its request for a psychosexual examination.

"A court may deny a motion "to compel" due to a party's failure to meet and confer in good faith without proceeding to the merits of the motion." *Twin Falls NSC, LLC v. S. Idaho Ambulatory Surgery Ctr., LLC*, No. 1:19-CV-00009-DCN, 2020 WL 5523384, at *18 (D. Idaho Sept. 14, 2020) (citing Q*uintana v. USAA Life Ins. Co.*, 434 F. Supp. 3d 932, 939 (W.D. Wash. 2020) and *Rogers v. Guirbino*, 288 F.R.D. 469, 479 (S.D. Cal. 2012) (holding a court can deny a motion to compel solely because of a party's failure to meet and confer prior to filing the motion.)). As the Court finds that Hayes Management failed to meet and confer with Carbajal regarding any request for a standard emotional distress assessment, it will deny Hayes Management's request in this regard.

Even if the Court were to overlook Hayes Management's failure to meet and confer on this specific issue, the Court would nevertheless deny its request for a standard mental examination of Carbajal. Hayes Management's repeated requests for a psychosexual evaluation, including in this motion, as the well as the statements of its expert, demonstrate that it does not seek a run-of-the-mill mental examination as permitted under Rule 35 and the prevailing case law, which allows an IME when a plaintiff asserts more than a garden-variety claim for emotional

distress; instead it is clear that Hayes Management functionally continues to seek a psychosexual evaluation.

For example, Hayes Management's expert states: "Angie's claims of sexual harassment are out of sync with the references in the Blair Family Medical records that Angie was sexually active (5.9.2019 through 5.22.2020), using birth control, without sexual problems and feeling safe in a relationship...genuine victims of sexual harassment frequently have problems in their consensual, private sexual relationships." Dkt. 116-5 at 2-3. This statement from Hayes Management's expert reveals that it seeks to improperly probe into Carbajal's sexual history and private sexual behavior through its requested examination of Carbajal. But, as already discussed, this evidence has little, to no, probative value in this case, and the Court's ordering a psychosexual evaluation of Carbajal would be highly inappropriate – no matter how Hayes Management attempts to characterize the grounds for its request.

In fact, it is hard to conceive how Hayes Management thought it appropriate to ask Carbajal to undergo a psychosexual evaluation, which are explicitly reserved for convicted sexual offenders to assist with sentencing and assess their "future dangerousness." The Court, however, *may* have been willing to give Hayes Management the benefit of the doubt in making the request had it not made other inappropriate requests in discovery, including serving Carbajal with an

interrogatory asking her to identify each person she has had sexual contact with

from January 2012 to August 2017. *See Ulrich Decl.*, ¶ 3, Ex. A (Interrogatory No.

15). Hayes Management's discovery requests define "sexual contact" to mean the

following:

> 20. "Sexual contact" means the intentional touching, either directly or
> through the clothing, of the genitalia, anus, groin, breast, inner thigh, or
> buttocks of any person with an intent to abuse, humiliate, harass,
> degrade, or arouse or gratify the sexual desire of any person.

*Id.*

To reiterate, Carbajal's "sexual contact" with any individual other than Chris

Hayes has no probative value in determining the welcomeness of Hayes' sexual

conduct in the workplace. While Hayes Management may scoff at Carbajal's

"chafing" at its use of the term "sexual contact," as defined "word-for-word" by

Congress in a criminal statute, Hayes Management has "presumptively inflicted

harm upon [Carbajal]" in repeatedly seeking this information. *C.f. Sheffield v.

Hilltop Sand & Gravel Co.*, 895 F. Supp. 105, 109 (E.D. Va. 1995) ("By ignoring

the express requirements of Rule 412(c), the defendant frustrated Rule 412's

objectives and presumptively inflicted harm upon the plaintiff."). The Court

therefore admonishes Hayes Management to cease its attempts to obtain

information from Carbajal regarding her private sexual behaviors and attitudes, or

risk facing sanctions under 28 U.S.C. § 1927 and the Court's inherent power. *See

B.K.B.*, 276 F. 3d at 1107-08.

The Court, however, will order Hayes Management pursuant to Rule 37(a)(5)(B) to pay Carbajal's costs in opposing this motion on the grounds that Hayes Management's motion to compel a psychosexual examination of Carbajal, or any mental health examination this late in the game, was not substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(B) (providing court must order payment of reasonable expenses for opposing a motion that is denied unless the motion was substantially justified, or other circumstances make the award of expenses unjust). Carbajal may submit an affidavit within 14 days of entry of this Order outlining the costs and fees she incurred in responding to this Motion.

## ORDER

IT IS ORDERED that:

1.  Defendant Hayes Management Services, Inc.'s Motion to Compel Plaintiff to Submit to IME (Dkt. 116) is DENIED.

2.  Plaintiff's request for attorney fees pursuant Rule 37(a)(5)(B) is GRANTED. Plaintiff may submit an affidavit within 14 days of entry of this Order outlining the costs and fees she incurred in responding to this Motion.

DATED: October 4, 2022

B. Lynn Winmill
U.S. District Court Judge