UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIA ANGELICA "ANGIE" CARBAJAL, | Case No. 4:19-cv-00287-BLW |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| HAYES MANAGEMENT SERVICES, INC.; HAYES TAX & ACCOUNTING SERVICES, INC.; and CHRIS HAYES, | |
| Defendants. | |

## INTRODUCTION

Before the Court is Plaintiff Carbajal's Motion for Sanctions Pursuant to Rule 37 and the Court's Inherent Power Re: Proof of the Number of Employees (Dkt. 183). For the reasons explained below, the Court will partially grant and partially deny the motion.

## BACKGROUND

Plaintiff Carbajal brings this employment discrimination lawsuit against her former employer and supervisor, Hayes Management Services, Inc. (HMS) and Chris Hayes. She claims that Hayes sexually harassed her on several occasions and, in doing so, created a hostile work environment in violation of Title VII of the

Civil Rights Act and the Idaho Human Rights Act (IHRA). She further claims that, after she reported Hayes' harassment and filed this lawsuit, HMS and Hayes retaliated against her in violation of Title VII and the IHRA by taking work responsibilities away from her and filing frivolous counterclaims in court.

With trial set to begin in one week, Carbajal asks the Court to enter default judgment against HMS and Hayes and proceed to trial solely on the issue of damages. She explains that recent disclosures by the other defendant in this case, Hayes Tax & Accounting Services, Inc., demonstrate serious discovery misconduct by HMS and Hayes and raise doubts as to whether they are concealing additional relevant evidence.

## 1.    Defendants' Prior Discovery Misconduct

This is not the first time that Carbajal has accused HMS and Hayes of denying the existence of and hiding relevant documents in this case. Nor is it the first time that the Court has recognized HMS and Hayes' failure to engage in good faith efforts to comply with the litigation rules and court's orders. A brief review of this litigation will provide helpful context.

### A.    HMS and Hayes Sanctioned for Concealing Evidence and Misrepresenting Facts

Carbajal originally filed this lawsuit in July of 2019 against HMS. In mid-January of 2021, however, Carbajal learned that HMS and Hayes had transacted to

sell HMS's assets to Hayes Tax & Accounting Services, Inc., a recently created entity owned by Hayes' daughter, Melissa Galles, and one of his former employees, Brandy Mann. Carbajal followed up with various discovery requests seeking information and documents related to the sale of the business.

In their discovery responses, HMS and Hayes concealed and withheld key documents and made numerous false and misleading representations to Carbajal and the Court. *See Memo. Decision & Order* at 36, Dkt. 115. The truth only came to light later, when Hayes Tax produced documents contradicting HMS and Hayes' discovery responses. *Id.* at 22–25. In its Order granting sanctions, the Court identified no fewer than seven specific misrepresentations made by HMS and Hayes about their transaction with Hayes Tax. *Id.* at 22–23.

After learning more about the transaction between HMS, Hayes, and Hayes Tax, Carbajal filed her Second Amended Complaint adding Hayes Tax as a defendant and adding claims for alter ego liability, successor liability, and constructive trust. Dkt. 79. She also moved for terminating sanctions against HMS and Hayes based upon their discovery misconduct. Dkt. 103.

The Court partially granted Carbajal's motion for sanctions. *Memo. Decision & Order*, Dkt. 115. Because the withheld documents related to the financial relationship between HMS and Hayes and Hayes Tax, the Court prohibited Hayes

from contesting Carbajal's alter ego claim and prohibited HMS and Hayes from contesting Carbajal's constructive trust claim. However, despite its finding that HMS and Hayes acted in bad faith, the Court denied Carbajal's request for case-terminating sanctions because HMS and Hayes' "misconduct in withholding key documents" lacked the necessary nexus to Carbajal's underlying Title VII and IHRA employment discrimination claims. *Id.* at 37–38.

The Court made clear, however, that HMS and Hayes "should nonetheless be warned that continued misconduct will put case-terminating sanctions back on the table." *Id.* at 38. "If Hayes Management and Hayes' pattern of deception in discovery continues, it will make it impossible for the Court 'to be confident that the parties will ever have access to the true facts,' and a case dispositive sanction may be appropriate at that time." *Id.* at 39 (quoting *In re Hurt*, 210 F.3d 383 (9th Cir. 2000)).

## B.   HMS Held in Contempt and Sanctions Awarded Against HMS and Hayes

After the Court partially granted Carbajal's motion for sanctions, Carbajal filed a motion for an award of attorney fees she had incurred in seeking the sanctions. The Court granted her motion and ordered HMS and Hayes to pay Carbajal $33,750.00 in attorney fees and $2,625.00 in costs. Dkt. 159.

Two months later, Carbajal filed a motion seeking to hold HMS and Hayes

in contempt for failing to comply with the Court's attorney fee order. Dkt. 166. Despite her repeated demands, she explained, HMS and Hayes had neither paid the fee award nor made any effort to negotiate a periodic payment schedule. HMS and Hayes responded that they could not possibly be found to have violated the Court's attorney fee order because that order had not set a specific deadline for their payments. Moreover, they claimed they were unable to pay the entire fee award in one lump sum and would have to do so under a periodic payment schedule. But they did not explain why, four months after issuance of the Court's order, they still had not taken *any* steps to comply, whether by making partial payments, proposing a periodic payment schedule, or otherwise seeking the Court's or Carbajal's permission to delay payment.

Consequently, the Court held HMS in contempt and imposed monetary sanctions on HMS and Hayes in order to coerce compliance with its prior fee award. "Viewing the defendants' conduct as a whole," the Court explained, "it is clear to the Court that Chris Hayes has engaged in a 'studied course of conduct over a long period of time' to 'deliberately render' Hayes Management 'incapable of complying' with this Court's monetary awards, including the Sanction Award." *Id.* at 6 (quoting *Parker v. U.S.*, 126 F.2d 370, 379 (1st Cir. 1942)).

## 2.     Missing Documents Recently Produced by Melissa Galles

With that background, the Court turns now to Carbajal's most recent allegations of discovery misconduct. She claims that HMS and Hayes again failed to disclose critical documents related to the number of employees who worked for HMS in 2016 and 2017.

An employer is only subject to Title VII of the Civil Rights Act if it "has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). This "numerosity" requirement is an element of Carbajal's Title VII claim that she must prove at trial. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006).

During discovery in this case, Carbajal sought evidence about the number of individuals employed by HMS during 2016 and 2017. The nature of the tax preparation business means that HMS has more need for staff in the spring, during tax season, than the rest of the year. Consequently, one of the key questions related to the Title VII numerosity requirement is when HMS's seasonal tax preparers started and ended their employment each year.

Each year, Chris Hayes puts on a one-night-per-week tax training program beginning in October or November and running through January. *Hayes Aff.* ¶ 40, Dkt. 42. Hayes uses the course to train and evaluate tax preparers who will work for HMS during the upcoming tax season. *Id.* The parties dispute whether

attendance at these fall tax trainings in 2016 was mandatory or voluntary. According to Carbajal, tax preparers were required to attend the meetings, and those meetings coincided with their signing of non-compete agreements, W-4s, and I-9s. These facts, Carbajal insists, demonstrate that the seasonal tax preparers began their employment in the fall of 2016. According to HMS and Hayes, however, attendance at the tax training meetings was merely optional, and the seasonal tax preparers only begin their employment when they began performing tax preparation work in the spring of 2017.

Early in discovery, Carbajal sought information about the tax training meetings. In particular, she wished to determine whether attendance at those meetings was mandatory, and how many of the attendees were 'regulars'—that is, how many of them had worked for HMS in prior or subsequent years. She suspected that the responsive information and documentation would support her theory that the seasonal tax preparers began their employment in the fall rather than in the spring.

In late 2019, Carbajal served Request for Production 18, asking HMS to "[p]lease produce all attendance records for tax preparation training from January 2015 to the end of December 2017." *Casperson Dec.*, Ex. 1, Dkt. 186-1 at 20. On January 9, 2020, HMS responded as follows:

> <u>RESPONSE:</u> **Hayes Management has retained no such attendance records.** Hayes Management has only made attendance at tax preparation trainings a prerequisite to be hired on as a tax preparer for the 2019 tax prep season for the 2018 tax year, due to the changes wrought by the Tax Cuts and Jobs Act of 2017; for other tax prep seasons, attendance at the tax preparation training was not required to be hired as a tax return preparer, was voluntary, and was not compensated. **Rolls were, nevertheless, circulated and signed by those in attendance at the tax preparation trainings during 2015, 2016 and 2017.** Such were, before each tax prep season, reviewed by Chris Hayes to ascertain how serious a person applying to be a tax preparer may have been about so becoming for Hayes Management, but other than the late 2018 trainings, attendance has never been required. Consequently, **there has been no need to keep such attendance records, and such have not been kept.**

*Casperson Dec.*, Ex. 1 at 8, Dkt. 186-1. (emphasis added). In March 2020, HMS

provided a supplemental response that included the attendance sheet for the

2014/2015 tax training classes, but no attendance records from 2016 or 2017.

*Casperson Dec.*, Ex. 2, Dkt. 186-2.

Following discovery on the numerosity issue, HMS moved for summary

judgment. Dkt. 32. It argued that Carbajal's Title VII claims should be dismissed

because she could not show that HMS employed fifteen or more employees during

twenty or more weeks in 2016 or 2017. The Court denied the motion, finding

disputed factual issues related to when the seasonal tax preparers' employment

began and ended. Dkt. 59.

On October 26, 2023, plaintiff's counsel emailed defense attorney John

Simmons. She raised concerns about missing documents and requested that the defendants double check and ensure they had produced all documents responsive to Request for Production 18. *Casperson Dec.*, Ex. 4, Dkt. 186-4. Specifically, she emphasized the lack of attendance records from the 2016 and 2017 tax training meetings. She also explained that the defendants' production of only one Tax Season Expectations document for one employee from 2018 was "confusing," because "all tax preparers, at least in that year, should have signed one." *Id.* at 3. Mr. Simmons responded that "the only such records located were those that have been produced." *Id.* at 1. Moreover, he stated, it "seem[ed] most likely" that the missing attendance records from 2016 and 2017 were on a thumb drive that Carbajal allegedly "deleted and wiped clean." *Id.*

On November 3, 2023, Mr. Simmons followed up with a supplemental response to Request for Production 18. The response included one of the missing documents, titled "Tax Refresher-Night Class," which was "the attendance record kept by Melissa Galles for the late 2016 update classes." *Casperson Dec.*, Ex. 6 at 2, Dkt. 186-6. The document had been retrieved by Ms. Galles, and counsel for Hayes Tax had then provided the document to Mr. Simmons on November 3, 2023. Mr. Simmons offered no explanation for the years-long delay in producing the document. He stated only that the document "was today provided by Melissa

Galls [sic] to Chris Hayes." *Casperson Dec.*, Exs. 6 & 7, Dkt, 186-6 & 186-7.

Following that supplemental disclosure, plaintiff's counsel reached out to counsel for Hayes Tax to determine whether any of the other missing documents could be located by Ms. Galles. *Casperson Dec.*, Ex. 11, Dkt. 186-11. On November 15, 2023, counsel for Hayes Tax did provide one additional document, entitled "2018 HMS Employee & Tax Preparer Checklist." *Casperson Dec.*, Ex. 32, Dkt. 197-3.

### 3.    Motion for Terminating Sanctions (Dkt. 183)

Shortly after receiving the missing 2016/2017 tax training attendance records, Carbajal filed a Motion for Sanctions Pursuant to Rule 37 and the Court's Inherent Power Re: Proof of the Number of Employees (Dkt. 183). She explains that the attendance records provide "the missing piece that tie TimeTrex, W4 and training together, showing when the tax preparation employees began working." *Pl.'s Memo. in Supp.* at 6, Dkt. 183-1. Indeed, she explains, if the attendance records had been disclosed earlier, she would have moved for summary judgment on the numerosity issue.

More importantly, however, she argues that Melissa Galles' recent disclosure exposes yet another example of HMS and Hayes failing to undertake good faith discovery efforts throughout this litigation. Considering their repeated

misconduct, she argues, neither she nor the Court can be confident that other relevant documents believed to exist are not also being withheld. The following, for example, are documents that Carbajal has reason to believe exist, but that still have not been produced by the defendants:

- Tax Training Attendance Records: Attendance records from 2015-16 and 2017-18 tax training meetings.

- Tax Season Expectations document: Forms provided to those attending tax training meetings in 2016 and 2017 setting out expectations for tax season and containing signed acceptances of employment as tax preparers.

- HMS Employee Checklists: Spreadsheets tracking tax preparers' completion of requirements for employment.

- Tax Season Schedules: Schedules of tax preparation training sessions.

- HMS Training & Procedures Manual.

Carbajal asks the Court to award case-terminating sanctions against HMS and Hayes. She argues that their failure to provide the 2016/2017 attendance sheets bears on an essential element of her Title VII claims. HMS and Hayes respond by explaining that the 2016/2017 attendance record simply slipped through the cracks during discovery, and that they were "not cognizant of its existence" until Melissa

Galles discovered it on November 3, 2023. *Def.'s Resp.* at 2, Dkt. 198. Moreover, they argue, the attendance sheet does not support Carbajal's position on the numerosity issue, because it shows that 100% attendance was not required for seasonal tax preparers. *Id.* at 4–12.

## LEGAL STANDARD

The rules of discovery are intended to ensure both parties have "access to the true facts" because "[t]here is no point to a lawsuit, if it merely applies law to lies." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007) (internal quotation marks and citation marks omitted). The Court has two sources of authority through which it can impose sanctions for severe discovery abuses: the inherent power of the federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37. *See Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Carbajal seeks terminating sanctions under both.

District courts have inherent power to impose sanctions, including default or dismissal, when a party has "willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1338 (9th Cir. 1985); *see also TeleVideo*

*Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916 (9th Cir. 1987) ("Courts have inherent equitable powers to dismiss actions or enter default judgments[.]"). Terminating sanctions are a severe remedy and should be imposed only "where the violation is due to willfulness, bad faith, or fault of the party." *In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996) (internal quotation marks and citation omitted); *see also Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (terminating sanctions are warranted where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings"). The Court's factual findings may not be set aside unless they are clearly erroneous, and its credibility determinations are entitled to special deference. *Anheuser-Busch*, 69 F.3d at 348.

"The most critical criterion for the imposition of a dismissal sanction is that the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case." *Tripati v. Corizon Inc.*, 713 Fed. App'x 710, 711 (9th Cir. 2018) (quoting *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 381 (9th Cir. 1988)). This rule arises from due process concerns, which require a nexus exist between the party's actionable conduct and the merits of his case. *Hathaway v. Idaho Pac. Corp.*, No. 4:15-CV-00086-DCN, 2020 WL 2858003, at *12 (D. Idaho June 2, 2020). If such a nexus exists, courts must weigh the

following factors (the "*Anheuser-Busch* factors") prior to imposing terminating sanctions: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Anheuser-Busch*, 69 F.3d at 348. The Court does not need to make explicit findings regarding each of the five factors. But a finding of "willfulness, fault, or bad faith" is required for dismissal or default judgment to be proper. *Id.* at 348; *Fjelstad*, 762 F.2d at 1337. "Where a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate." *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1096 (citations omitted).

## DISCUSSION

The Court will analyze Carbajal's request for terminating sanctions in three steps. First, it must determine whether HMS and Hayes' failure to produce the 2016/2017 tax training attendance sheet was due to willfulness, bad faith, or fault. Second, the Court must determine whether there is a sufficient nexus between the misconduct and merits of the case to satisfy due process. And finally, the Court must determine whether the *Anheuser-Busch* factors support terminating sanctions or some less drastic alternative.

1.     **Willfulness, Bad Faith, or Fault**

The defendants' failure to produce the 2016/2017 tax training attendance record was the result of fault, at best, and willfulness, at worst.

"It is well established in this circuit that disobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault." *Virtual Vision, Inc. v. Praegitzer Industries, Inc.*, 124 F.3d 1140, 1143 (9th Cir. 1997) (quoting *Henry v. Gill Industries*, 983 F.2d 943, 948 (9th Cir. 1993)) (internal quotation marks omitted). Thus, "[p]roviding false or incomplete information . . . in a response to a discovery request constitutes the sort of willfulness, bad faith, or fault required for dismissal." *Hathaway*, 2020 WL2858003, at \*14 (citing *Arnold v. Cnty. of El Dorado*, No. 2:10–CV–3119 KJM GGH, 2012 WL 3276979, at \*4 (E.D. Cal. Aug. 9, 2012)).

Nearly four years ago, Carbajal served HMS with a Request for Production specifically seeking "all attendance records for tax preparation training from January 2015 to the end of December 2017." *Casperson Dec.*, Ex. 1, Dkt. 186-1 at 20. Hayes and other HMS employees reportedly searched the company files but did not find any attendance records from 2016 or 2017. *Def.'s Resp.* at 1–2, Dkt. 198. They explained that "there has been no need to keep such attendance records," so HMS had "retained no such attendance records." *Casperson Dec.*, Ex. 1 at 8,

Dkt. 186-1.

Now, just weeks before trial, the missing 2016/2017 tax training attendance records have finally been "discovered" and produced by Melissa Galles. The Court recognizes that even parties who are acting in good faith sometimes inadvertently fail to identify or disclose relevant documents in discovery. But there is almost always *some* explanation for such a failure. For example, a file name may have led the party to mistakenly conclude that a document was not responsive to the discovery request. Or an important search term may have been inadvertently omitted when the party searched their files for responsive records.

Here, however, the defendants do not even attempt to explain why the 2016/2017 attendance records were not produced during discovery, or at any other time over the past four years. They state only that "voluminous records" were produced in response to Carbajal's original discovery request, and that the attendance records were recently located by Ms. Galles on November 3, 2023. *Def.'s Resp.* at 2, Dkt. 198.

The attendance sheet is not some obscure record that is only tangentially related to the merits of this case. Rather, that record is one that Carbajal specifically identified as relevant in her discovery request in 2019. It was also highly relevant to the numerosity issue that HMS litigated with its Motion for

Summary Judgment (Dkt. 32) in 2020. The defendants had notice that the attendance records were relevant to an important issue in this case. Yet, they have not provided any explanation for their failure to identify and produce it before now.

Additionally, the defendants have not shown—or even suggested—that the failure to produce the attendance sheet was outside of their control. Nor could they. The sale of HMS's assets—and, presumably, the transfer of company files—to Hayes Tax did not occur until December 31, 2020, well after the defendants responded to Carbajal's Request for Production 18. Dkt. 66.

In sum, the defendants have not explained why they failed to produce the 2016/2017 tax training attendance records during discovery. This follows their repeated failures throughout this litigation to engage in good faith discovery and abide by the Court's orders. The Court therefore finds that, at worst, the defendants intentionally withheld the 2016/2017 tax training attendance sheet, and at best, their failure to produce it was the result of fault.

## 2.   Due Process

Awarding terminating sanctions on Carbajal's Title VII claims would not violate due process because the unproduced attendance sheet bears on an essential element of Carbajal's Title VII claims. The Court denied Carbajal's prior request

for terminating sanctions because the defendants' misconduct was not tied to the underlying merits of this civil rights lawsuit. But that is not true here.

The 2016/2017 attendance sheet bears on the question of whether the seasonal tax preparers hired by HMS began their employment in the fall of 2016, or in the spring of 2017. This question, in turn, is central to whether Carbajal can establish Title VII's numerosity requirement. Accordingly, there is a sufficient nexus between the defendants' misconduct and the merits of this lawsuit to place terminating sanctions on the table.

### 3.    *Anheuser-Busch* Factors for Terminating Sanctions

The final step in determining whether terminating sanctions are appropriate is to apply the *Anheuser-Busch* factors. The first three factors weigh in favor of granting Carbajal's motion for termination sanctions; the last two factors weigh against terminating sanctions.

### A.    Factor 1 and 2

HMS and Hayes' repeated failure to engage in good faith discovery and cooperate with Court orders has harmed the public's interest in the expeditious resolution of litigation and the Court's need to manage its docket. Specifically, their failure to disclose the 2016/2017 attendance sheet until just weeks before the start of trial has necessitated a flurry of time-sensitive motion practice, which has

required the parties and attorneys to expend substantial resources. It has also taken the Court's time and attention away from trial preparation and added a drain on judicial resources. And, it has prevented Carbajal from filing a motion for summary judgment so as to possibly remove the issue of numerosity from the matters that must be resolved at trial.

Slow and expensive litigation harms the public by straining judicial resources and increasing the cost of resolving disputes in court. Without good faith and diligent efforts to comply with the rules of discovery, courts cannot manage their dockets and ensure the "just, speedy, and inexpensive determination of all actions." FED. R. CIV. P. 1. Unfortunately, that has been the story of this case.

### B.   Factor 3

The third *Anheuser-Busch* factor also supports granting Carbajal's motion. A party "suffers prejudice if the [opposing party's] actions impair the [party's] ability to go to trial or threaten to interfere with the rightful decision in the case." *Adriana Intern. Corp. v. Theoren*, 913 F.2d 1406, 1412 (9th Cir. 1990). For example, a party is prejudiced when the other party engages in a "pattern of deception and discovery abuse" that "make[s] it impossible for [a court] to be confident that the parties will ever have access to the true facts." *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1097 (quoting *Valley Eng'rs Inc.*, 158 F.3d at 1058).

Here, the defendants' failure to produce the 2016/2017 attendance sheet has prejudiced Carbajal in at least two ways. First, Carbajal has not had the opportunity to incorporate the document into her litigation strategy or trial preparation. For example, she explains that she would have moved for summary judgment on the numerosity element if she had received the document earlier.[1]

Second, Carbajal is prejudiced because the defendants' repeated failure to provide complete discovery responses throughout this litigation leaves serious doubts as to whether all evidence related to the numerosity issue has been produced. Carbajal has identified several records that, based upon her recollections and screenshots taken of HMS's files while in her possession, likely exist but remain unproduced. *Pl.'s Reply* at 4–5, Dkt. 219. Considering the defendants' conduct throughout this litigation, the Court shares Carbajal's concerns and is left with no confidence that the defendants have produced all relevant documents bearing on the numerosity element.

### C.    Factor 4 & 5

The fourth *Anheuser-Busch* factor always weighs against terminating sanctions because public policy favors resolving cases on the merits whenever

---

[1] The Court makes no determination here of whether such a motion would have been successful.

MEMORANDUM DECISION AND ORDER - 20

possible. That is especially true when, as here, substantial time and expense has already been invested and trial is imminent.

The fifth factor also weighs against terminating sanctions in this case. Before imposing case-terminating sanctions, a court must consider less drastic alternative sanctions. *Halaco Eng'g Co.*, 843 F.2d at 381; *see also United States v. National Medical Enters., Inc.*, 792 F.2d 906, 912 (9th Cir. 1986). However, "[t]here is no requirement that every single alternate remedy be examined by the court before the sanction of dismissal is appropriate. The reasonable exploration of possible and meaningful alternatives is all that is required." *Anderson v. Air West, Inc.*, 542 F.2d 522, 525 (9th Cir. 1976).

The first time that HMS and Hayes withheld relevant documents in this case, the Court granted sanctions in the form of prohibiting them from contesting Carbajal's claims for alter ego liability and constructive trust. That preclusion remedy balanced the prejudice suffered by Carbajal with the ever-present public policy favoring resolutions of legal claims on the merits. That same tailored sanction is appropriate here, too.

The 2016/2017 attendance records and the other missing documents all bear on the numerosity element of Carbajal's Title VII claim. Allowing the defendants to contest Carbajal's numerosity arguments at trial would ignore the prejudice

suffered by Carbajal and reward the defendants for withholding any relevant documents that remain unproduced. Accordingly, the Court will prohibit HMS and Hayes from contesting Carbajal's claim that HMS had fifteen or more employees for twenty weeks or more during 2016 or 2017.[2] Because this less drastic remedy is a sufficient sanction, however, the Court will deny Carbajal's request to enter default judgment against the defendants.

## ORDER

**IT IS ORDERED that:**

1.      Plaintiff's Motion for Sanctions Pursuant to Rule 37 and the Court's Inherent Power Re: Proof of the Number of Employees (Dkt. 183) is **GRANTED, in part, and DENIED, in part**.

2.      Defendant Hayes Management Services, Inc. and Defendant Chris Hayes are prohibited from contesting Carbajal's claim that Hayes Management Services, Inc. had fifteen or more employees for twenty weeks or more during 2016 or 2017.

---

[2] To be clear, Carbajal will still bear the burden of proving the numerosity element at trial. This Order simply prohibits the defendants from contesting Carbajal's evidence and argument on that issue.

DATED: December 4, 2023

B. Lynn Winmill
U.S. District Court Judge