UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIA ANGELICA "ANGIE" CARBAJAL, | Case No. 4:19-cv-00287-BLW |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| HAYES MANAGEMENT SERVICE, INC.; HAYES TAX & ACCOUNTING SERVICES, INC.; and CHRIS HAYES, | |
| Defendants. | |

## INTRODUCTION

Plaintiff Maria Angelica "Angie" Carbajal brings this employment discrimination lawsuit against her former employer, Hayes Management Services, Inc. (HMS). She claims that her supervisor, Chris Hayes, sexually harassed her on several occasions and, in doing so, created a hostile work environment in violation of Title VII of the Civil Rights Act and the Idaho Human Rights Act (IHRA). She further claims that after she reported Mr. Hayes's harassment and filed this lawsuit, HMS retaliated against her in violation of Title VII and the IHRA by taking work responsibilities away from her and filing frivolous counterclaims in court.

Trial is set to begin December 11, 2023. The parties have filed various

**MEMORANDUM DECISION AND ORDER - 1**

motions in limine. *See* Dkts. 184, 191, & 210. The Court's rulings on those motions are set forth below.

## LEGAL STANDARD

### 1.     Motions in Limine

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, they are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). Rulings on motions in limine are preliminary opinions that are "entirely within the discretion of the district court." *Id.*; *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Further, such rulings are provisional and therefore "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Accordingly, at trial, the Court will entertain objections on individual proffers as they arise, even though the proffer falls within the scope of a denied motion in limine. *See Luce*, 469 U.S. 38 at 41–42 ("Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

### 2.     Federal Rules of Evidence 401, 402, & 403

The rules governing relevant evidence, Federal Rules of Evidence 401, 402, and 403, are often central in deciding motions in limine. Rule 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Rule 402 provides that, with certain exceptions, relevant evidence is admissible. Rule 403 provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EV. 403.

Unfair prejudice refers to an undue tendency to influence a decision on an improper basis, such as an emotional response, or with evidence designed to elicit a response from the jurors that is not justified by the evidence. *See United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998). Even if there is only a modest likelihood of unfair prejudice or a small risk of misleading the jury, evidence that presents only slight probative value must be excluded. *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

## DISCUSSION

## 1.     Prior Conviction Evidence

Two motions in limine seek to determine the admissibility of evidence of Chris Hayes's prior conviction for felony sexual battery in 2007. Dkts. 184-1 & 191. Three evidentiary rules are relevant: Rule 404(b)(1), Rule 404(b)(2), and Rule 403.

Rule 404(b)(1) prohibits the use of propensity evidence. It states: "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Conversely, Rule 404(b)(2) allows the admission of such evidence under certain circumstances: "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

Even if evidence clears the Rule 404(b)(1) hurdle and would be offered for a permissible purpose under Rule 404(b)(2), the evidence must also withstand scrutiny under Rule 403. Rule 403 authorizes courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EV. 403.

In July of 2007, Chris Hayes was convicted on one felony count of sexually battering a minor female. Dkt. 186-29. The victim was a sixteen-year-old

MEMORANDUM DECISION AND ORDER - 4

receptionist who worked for HMS, and the battery was alleged to have occurred in the workplace. Hayes was sentenced to fifteen years with a minimum of five years served. *Id.* Following Hayes's conviction, he was required by law to register as a sex offender. He did so until successfully obtaining an Exemption Order on August 8, 2019. Dkt. 191-1 at 6.[1]

Carbajal argues that evidence of Hayes's prior criminal conviction is admissible at trial under Rule 404(b)(2). HMS objects on two grounds: first, it argues that such evidence is inadmissible "propensity evidence" under Rule 404(b)(1); and second, it argues that such evidence is inadmissible under Rule 403 because its probative value is substantially outweighed by the risk of unfair prejudice.

At this stage, the Court anticipates excluding evidence of Hayes's prior conviction under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice. First, that evidence has relatively little probative value in this case. Carbajal argues that "Me Too" evidence is often allowed under Rule 404(b)(2) in Title VII cases to prove the harasser's knowledge, motive, and intent. Further, she explains, "Hayes's history of being on the sex offender registry

---

[1] Per Hayes's request, the Court hereby takes judicial notice of the Exemption Order (Dkt. 191-1) pursuant to Federal Rule of Evidence 201(b)(2).

is part of Carbajal's concern and her efforts to get him to change his behavior." *Pl.'s Memo. in Opp.* at 5-6, Dkt. 196. But even assuming *arguendo* that the conviction would be admissible under Rule 404(b)(1) to show knowledge, motive, or intent, its probative value would be minimal because the criminal conduct occurred more than a decade before the alleged harassment in this case.

Second, allowing the jury to hear evidence of Hayes's prior conviction would create a significant risk of unfair prejudice. Convictions for sexual crimes involving minors carry heavy stigmas in our society. And the risk of a juror taking that stigma into the jury room is especially high in cases, like this one, involving allegations of sexual harassment. Of course, as Carbajal emphasizes, only "*unfair* prejudice" is impermissible under Rule 403. But a juror's substitution of stigma for objective analysis is certainly unfair.

Evidence of Hayes's prior criminal conviction has marginal probative value and, if admitted at trial, would likely create a significant risk of unfair prejudice. Accordingly, the Court will likely exclude this evidence at trial. However, the Court may reconsider this preliminary decision if appropriate in the context of trial. Carbajal should *not* offer this evidence in the presence of the jury unless the Court has given her express permission to do so.

2.    **"Me Too" Evidence (Dkt. 184-1)**

Next, Carbajal seeks to offer "Me Too" evidence from other female coworkers and clients of HMS. Dkt. 184-1. The evidence would include testimony by female staff members who Hayes allegedly touched and/or made sexual remarks to, and testimony by one former employee who allegedly observed Hayes watching pornography in his office. Dkts. 119-5; 119-6, 119-7. It would also include testimony from a former female HMS client who Chris Hayes allegedly hugged inappropriately during a client meeting in 2015. Dkt. 119-8.

Carbajal offers two theories for admitting her "Me Too" evidence. First, she argues that the evidence is admissible under Rule 404(b)(2) to prove that Hayes had the intent, motive, and opportunity to sexually harass her. And second, she argues that the evidence is admissible to prove that sexual harassment was pervasive in the workplace. *Pl.'s Reply* at 1–2, Dkt. 215.

HMS objects to Carbajal's "Me Too" evidence on two grounds. First, it argues that the evidence is inadmissible propensity evidence under Rule 404(b)(1). And second, it argues that Carbajal's entire Title VII claim is time-barred, so the "Me Too" evidence is irrelevant. *Def.'s Resp.* at 2, Dkt. 199.

### A.   Carbajal's "Me Too" evidence is not admissible under Rule 404(b)(2).

Evidence that a person has committed other crimes, wrongs, or acts is not admissible to suggest that the person acted similarly on a particular occasion. FED.

R. Ev. 404(b)(1). However, such evidence is admissible for any other purpose, including to prove a person's motive, intent, or opportunity on a particular occasion. Fed. R. Ev. 404(b)(2).

Carbajal claims that she is not offering "Me Too" evidence to prove Hayes's propensity for sexual harassment, but instead to show that he had the intent, motive, and opportunity to sexually harass her while she was employed by HMS. That claim is dubious, however, because Carbajal's purported purpose, though phrased in 404(b)(2) terms, is indistinguishable from propensity. She intends to show the jury that, given the proclivities Hayes has exhibited in the past with other women, he likely intended, was motivated to, or had the opportunity to sexually harass her. Put another way: he has harassed other women, so he probably intended, was motivated to, and had the opportunity to, harass Carbajal.

Rule 404(b)(1) would be essentially meaningless if parties were permitted to admit propensity evidence under Rule 404(b)(2) simply by invoking the terms "intent," "motive," and "opportunity," and finding some plausible connection between the evidence and those showings. Instead, for evidence of crimes, wrongs, and other acts to come in under Rule 404(b)(2), a party must show that the evidence is probative as to some other purpose that does not merely rest on the propensity instinct. Here, Carbajal has not shown that her "Me Too" evidence

would serve any such purpose.

Carbajal relies on several cases from the Ninth Circuit and other circuit courts to support her argument that "Me Too" evidence is admissible under Rule 404(b)(2) where similar acts of harassment or discrimination are in question. But a careful review of those cases reveals important differences.

First, Carbajal cites the Ninth Circuit's decision in *Heyne v. Carruso*, 69 F.3d 1475, 1481 (9th Cir. 1995). There, a former waitress, Heyne, sued her employer for quid pro quo sexual harassment in violation of Title VII. *Id.* at 1477. She claimed that she was fired for repeatedly refusing her employer's sexual demands. *Id.* At trial, she sought to call six other female witnesses to testify that the employer had also sexually harassed them. But the district court excluded that "Me Too" evidence, and, after losing at trial, Heyne appealed that decision.

The Ninth Circuit reversed, finding that the district court abused its discretion by refusing to admit the testimony of the other female employees who claimed to have been sexually harassed by the employer. *Id.* at 1482. The employer's conduct toward other female employees was admissible under Rule 404(b)(2) because it bore on his "motive for discharging Heyne." *Id.* In other words, because Heyne was claiming quid pro quo discrimination, "[t]here [was] a direct link between the issue before the jury—*the employer's motive behind firing*

*the plaintiff*—and the factor on which the jury's decision [was] based—the employer's harassment of other female employees." *Id.* at 1481 (emphasis added).

The Ninth Circuit's reasoning in *Heyne* makes perfect sense in the context of a quid pro quo claim, because the employer's motive for firing Heyne was an essential element of her claim. That is, the "Me Too" evidence had real, non-propensity probative value, because it supported Heyne's theory that her employer fired her *because* she refused his sexual advances. [2]

Similarly, motive and intent were central to the claims asserted by the plaintiffs in the other cases that Carbajal cites. *Allen v. Perry*, 279 F. Supp. 2d 36, 46 (D.D.C. 2003) (racially discriminatory hiring decision); *Morgan v. Federal Home Loan Mortgage Corp.*, 197 F.R.D. 12, 16 (D.D.C. 2000) (racially discriminatory hiring decision).[3] Each case involved claims of racial discrimination in hiring decisions, which, like quid pro quo harassment claims, require a showing that the discriminatory act was motivated by the plaintiff's membership in a

---

[2] The same is true of *EEOC v. Farmer Bros. Co.*, another Ninth Circuit case cited by Carbajal. 31 F.3d 891, 897–98 (9th Cir. 1994). That case involved a claim for gender-based discriminatory discharge, and the court directly tied the probative value of the "Me Too" evidence to the employer's intent in terminating female employees.

[3] Carbajal also cites *White v. U.S. Catholic Conference*, 1998 WL 429842 *5 (D.D.C. May 22, 1998). But that case simply referenced the general rule that other act evidence may be admissible under Rule 404(b)(2) and therefore does not need in-depth analysis here.

**MEMORANDUM DECISION AND ORDER - 10**

protected class.

Here, Carbajal is not claiming quid pro quo discrimination. Rather, she claims that Hayes's conduct toward her and her coworkers created a hostile, sexually charged work environment. She must only show that she was subject to hostile, humiliating, insulting, or other conduct so severe that it altered the conditions of her employment. Thus, unlike in cases that hinge on an employer's subjective motivations, evidence that Hayes harassed other female employees in the past does not serve a legitimate Rule 404(b)(2) purpose in this case.

Accordingly, Carbajal's "Me Too" evidence is not admissible as other act evidence under Rule 404(b)(2).

### B.    Carbajal's "Me Too" evidence is admissible to show that sexually offensive conduct was pervasive in the workplace.

Carbajal's second theory for admitting "Me Too" evidence is stronger. She argues that her hostile work environment claim is not only based on Hayes's conduct toward her, but also Hayes's conduct toward her female coworkers. That is, all of the offensive conduct that she observed and heard about contributed to the hostility of the work environment. Thus, she argues, evidence of all of those instances should be admitted to corroborate her own testimony and demonstrate that sexually offensive conduct was pervasive in the workplace. The Court agrees and will admit her "Me Too" evidence for this purpose.

MEMORANDUM DECISION AND ORDER - 11

Evidence that Hayes sexually harassed other female employees at HMS is relevant to Carbajal's claim that the work environment at HMS was sexually hostile. *Zetwick v. County of Yolo*, 850 F.3d 436, 445 (9th Cir. 2017); *see also Dominguez–Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1036 (9th Cir. 2005) (evidence that other women were harassed showed that hostility pervaded the workplace); *Heyne v. Caruso*, 69 F.3d 1475, 1479–81 (9th Cir. 1995); *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004) ("[I]f . . . hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at the plaintiff."). Hostility in a workplace often arises from multiple instances of verbal or physical harassment directed at more than one individual. Hostile work environment claims therefore cannot be viewed in a vacuum where the plaintiff is limited to only presenting evidence of conduct specifically directed at them.

Carbajal may present "Me Too" evidence to show that Hayes's alleged sexual harassment of female employees and clients in the workplace was pervasive. However, such other acts of harassment are only relevant to the extent that Carbajal was aware of those acts, either because she personally observed them or because she was told about them. Thus, other female employees and/or clients may testify about Hayes's sexual comments and conduct so long as Carbajal

observed or was made aware of the conduct described during her employment at HMS.

As a precaution, jurors will be instructed that they may not consider that testimony as character evidence indicating Hayes's propensity for sexual harassment. They may only consider it as evidence of whether the work environment at HMS was hostile.

"Me Too" evidence may also be admissible to rebut the *Faragher/Ellerth* affirmative defense. Neither party addressed this point in their briefing, however, so the Court will reserve its ruling until trial.

### C.     HMS waived its timeliness argument.

What remains is HMS's timeliness argument. For the first time since this lawsuit was filed nearly four years ago, HMS claims that Carbajal's entire Title VII hostile work environment claim is time-barred because she did not file her EEOC complaint within 180 days after the alleged harassment occurred. *Def.'s Resp.* at 2–3, Dkt. 199. It is hard to imagine why HMS would wait to raise this issue until now. They could have raised it in their Answer (Dkt. 4), Amended Answer (Dkt. 6), Second Amended Answer (Dkt. 31), first or second motion for summary judgment (Dkts. 8 & 32), or at any time prior to the dispositive motion deadline. But they did not do so until now, on the eve of trial, after a lengthy and

expensive litigation.

Title VII's 180-day filing requirement is not jurisdictional and may be waived. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). HMS waived this argument by failing to raise it until now.

### 3.    Numerosity Evidence (Dkt. 184-2)

Carbajal also seeks to bar HMS from offering evidence about the number of employees who worked for HMS during 2016 and 2017. This request is moot in light of the Court's orders deeming the numerosity element established. *See* Dkts. 234 & 247. Any evidence related to the number of employees is now irrelevant and will be excluded.

### 4.    Counterclaim Evidence (Dkt. 184-3)

Next, Carbajal seeks to exclude all evidence related to HMS's dismissed counterclaims. *Pl.'s Memo. in Supp.* at 2, Dkt. 184-3. A brief background of those counterclaims is a good place to start.

Shortly after being served with Carbajal's Complaint, HMS filed an Answer and three counterclaims for breach of contract, tortious interference with a prospective economic advantage, and punitive damages. Dkts. 4 & 6. To support its breach of contract counterclaim, HMS alleged that Carbajal had violated her Non-Compete Agreement by (1) "enticing clients to stop using the services of

Hayes Management," (2) "soliciting clients of Hayes Management to seek the payroll, tax return preparation, business consulting, etc. services elsewhere," and (3) encouraging Zak Warran to form a competitor company. *Counterclaim* ¶¶ 74–80, Dkt. 4. To support its tortious interference counterclaim, HMS alleged that Carbajal had "intentionally acted to sow seeds of discontent and discord among the other, remaining staff members of Hayes Management since at least August 2017, in order to exact [] vengeance," and that she solicited payroll clients from Hayes Management. *Id.* ¶¶ 86–95. Finally, to support its claim for punitive damages, HMS simply incorporated its prior allegations.

On January 17, 2023, the Court granted Carbajal's motion for summary judgment on HMS's counterclaims, concluding that HMS had "failed to submit any evidence" to support its allegations. *Mem. Decision & Order* at 5-11, Dkt. 149.

One of Carbajal's employment claims is that HMS retaliated against her in violation of Title VII and the IHRA. To succeed on her retaliation claim, Carbajal must show that (1) she participated in a protected activity, (2) she suffered an adverse employment action, and (3) the adverse employment action was taken because of her participation the protected activity. *See* Ninth Circuit Model Civil Jury Instruction 10.8.

Carbajal will first attempt to show that she engaged in a protected activity

when she objected to Hayes's behavior, reported her concerns to HMS personnel, and pursued her Title VII and IHRA claims against HMS. *Pl.'s Trial Brief* at 9, Dkt. 178. Next, she will attempt to show that HMS subjected her to an adverse employment action by taking various job duties away from her and filing frivolous counterclaims in court. *Id.* Finally, she will attempt to establish a causal connection between the protected activity and adverse action by showing the temporal proximity between (1) her objections to Hayes's conduct and changes to her job duties, and (2) her filing of this lawsuit and HMS's filing of its meritless counterclaims. *Id.* at 10.

Carbajal now asks the Court to exclude all evidence related to HMS's counterclaims, including any evidence "suggesting that Carbajal engaged in any malicious, wrongful, or improper actions tied to any of the allegations associated with the counterclaims." *Pl.'s Memo. in Supp.* at 5, Dkt. 184-3. She offers two grounds for doing so: relevance and Rule 403.[4]

### A.    Some evidence related to HMS's counterclaims is relevant to HMS's motive for terminating Carbajal and filing its counterclaims.

---

[4] Carbajal also raises hearsay and foundation concerns, but both relate only to testimony by Hayes about the tax training classes. Those objections are now moot in light of the Court's orders (Dkt. 234 & 247) deeming the numerosity element established.

Carbajal argues that evidence related to HMS's counterclaims is irrelevant because the Court already dismissed those counterclaims. But the analysis is not that simple. To prove the third element of her retaliation claim, Carbajal will attempt to show that HMS terminated her and brought its counterclaims for the purpose of retaliating. To rebut that claim, HMS must be allowed to argue that it terminated her and brought its claims for another purpose—namely, because it had legitimate reasons to fire her, and it believed that the counterclaims were valid. Therefore, HMS must be allowed to present evidence probative of its motive for terminating Carbajal and filing its counterclaims.

Of course, Carbajal can vigorously challenge HMS's evidence at trial and attempt to show that its purported reasons for firing her and filing the counterclaims were pretextual. All the same, HMS should be allowed to present evidence that is probative of its motivation for firing her and filing the counterclaims, because that motive is central to Carbajal's claim of retaliation.[5]

---

[5] In her Reply brief, Carbajal argues that any allegations of post-termination misconduct are irrelevant because "by their very nature, they cannot have had any bearing on the decision to terminate Carbajal." *Pl.'s Reply* at 3, Dkt. 216. But, as described above, termination is not the only adverse employment action that Carbajal is alleging. Rather, as set forth in her Trial Brief (Dkt. 178), she claims that the filing of baseless counterclaims was itself an adverse employment action. Dkt. 178 at 9 ("Plaintiff will also demonstrate that she suffered adverse employment actions when HMS raised false allegations and filed counterclaims for various breach of contract

(Continued)

To be clear, the Court is not deeming HMS's evidence conclusively admissible. To offer these exhibits at trial, HMS will have to show that they are sufficiently probative of its motive to outweigh any risk of prejudice or confusion of the issues.

Carbajal seeks to exclude nine exhibits related to HMS's counterclaims. After reviewing those exhibits, the Court makes the following preliminary determinations as to their probative value:

- Exhibit 2390, 2430, 2435, 2502, 2504, and 2520 may be probative of HMS's motive for firing Carbajal or bringing its counterclaims against her, but HMS must lay proper foundation at trial;

- Exhibit 2425 and 2505 do not appear probative of HMS's motive for firing or bringing counterclaims against Carbajal, and will be excluded unless HMS lays adequate foundation at trial;

- Exhibit 2705 may be probative of HMS's motive for firing Carbajal or bringing its counterclaims against her, but HMS must lay proper

---

causes of action related to her employment after she sued HMS for violations of Title VII and the IHRA."). Accordingly, HMS's allegations of post-termination misconduct are not categorically irrelevant because they may speak to its motivation for taking one of the alleged adverse employment actions.  On the other hand, if Carbajal chooses not to introduce such adverse employment evidence, the Court may reconsider and exclude evidence of post-termination misconduct.

foundation at trial. The notations added to the note by defense counsel or their witness are addressed elsewhere in this Order.

**B.    Some of the evidence related to HMS's counterclaims is inadmissible under Rule 403.**

The Court does agree with Carbajal as to two sub-categories of counterclaim evidence. Evidence suggesting that Carbajal took or "stole" client information on a thumb drive the day she was fired is not probative of HMS's motive for filing its counterclaims. The same is true of evidence related to HMS's allegation that she "caused a scene while attending a birthday party for the daughter of another HMS employee." *Pl.'s Memo. in Supp.* at 3, Dkt. 184-3. None of HMS's counterclaims were based upon these alleged incidents. The Court will therefore exclude this evidence because it lacks probative value and would create a danger of confusing the issues and of unfair prejudice to Carbajal. FED. R. EV. 403.

**4.    Other Exhibits & Witnesses (Dkt. 210)**

**A.    Undisclosed Witnesses**

Carbajal initially sought to exclude numerous witnesses who had not previously been identified by HMS. Dkt. 210-1. In response, HMS argued that many of those witnesses had been disclosed in Chris Hayes's initial disclosures, and others had been disclosed in HMS's Phase II disclosures. Dkt. 223. Carbajal replied, admitting that she "inadvertently missed" HMS's Phase II Initial

Disclosures but arguing that Chris Hayes's initial disclosures should not count. Dkt. 235.

In the meantime, the Court partially granted Carbajal's Motion for Sanctions (Dkt. 183) and deemed Title VII's numerosity element established. Dkts. 234 & 247. That ruling will have a significant effect on the witnesses that HMS is permitted to call at trial. The Court also ruled at a hearing held December 6, 2023, that Chris Hayes's initial disclosures will *not* be ignored, although Mr. Hayes will not be allowed to participate as a party at trial.

Due to the changing landscape, it is not clear which witnesses HMS currently intends to call and which of those witnesses remain the subject of Carbajal's motion in limine.[6] The parties are therefore directed as follows: HMS shall file an Amended Witness List by the end of the day on Saturday, December 9, 2023. Carbajal shall then file a one- or two-page renewed motion in limine by 10:00 a.m. on Monday, December 11, 2023, identifying which of Hayes's witnesses she is objecting to on the basis of nondisclosure.

### B.   Statements From IHRC Investigation

Carbajal objects to several of HMS's exhibits which contain its employees'

---

[6] As of the issuance of this Order, HMS has not filed an amended witnesses list reflecting the Court's recent rulings.

interviews with and statements to the IHRC. Exs. 2101, 2108-11, 2120-51, 2160-82, 2200, 2221, 2331. She argues that all of those statements were made out of court and therefore cannot be offered for the truth of the matter asserted. FED. R. EV. 802. The Court agrees. These exhibits will be excluded unless HMS shows that they fall within an exception to the hearsay rule.

### C.   Undisclosed Exhibits

Carbajal also objects that HMS failed to properly disclose numerous exhibits. Six of the challenged exhibits were already excluded by the Court in its order granting Plaintiff's Motion for Sanctions (Dkt. 208) (Exhibits 2507, 2510, 2511, 2513, 2516, and 2517). Five remain to be analyzed here: 2100, 2705, 2706, 2707, and 2708.

Exhibit 2100: Exhibit 2100 is described as a "Diagram Exhibit" containing the floor plan of HMS's facility. Dkt. 195. Carbajal objects that this diagram was never previously produced. HMS responds that the diagram did not fall within any discovery requests and will be offered merely as a demonstrative exhibit to "aid the jury's understanding of the testimony to be elicited from witnesses at trial." *Def.'s Resp.* at 7, Dkt. 223.

Federal Rule of Civil Procedure 26(a)(1)(A) requires a party to disclose "a copy—or a description by category and location—of all documents, electronically

stored information, and tangible things that the disclosing party has in its

possession, custody, or control and may use to support its claims or defenses,

unless the use would be solely for impeachment." Rule 26(e) further requires

parties to "supplement or correct" their disclosures "in a timely manner" when

additional information comes to light. The purpose of these rules is to avoid "trial

by ambush." *Ierardi v. Lorillard, Inc.*, 1991 WL 158911, at *3 (E.D. Penn. Aug.

13, 1991).

Carbajal explains that HMS failed to produce Exhibit 2100 until it filed its

list of demonstrative exhibits on November 17, 2023. HMS had an obligation to

produce this exhibit before now, and it has not shown that its failure to do so was

"substantially justified" or "harmless. *See* Fed. R. Civ. P. 37(c)(1). Exhibit 2100

will therefore be excluded, as a substantive exhibit.  However, it may be shown to

the jury as a demonstrative exhibit as necessary to permit a witness to explain their

testimony.  However, it will not be sent to the jury room during deliberations.

Exhibit 2705: Exhibit 2705 is a note purportedly found on an HMS

employee's desk following Carbajal's termination. Carbajal acknowledges  that

HMS may be able to lay foundation for the note itself, but she objects to the

admission of any "notations" that defense counsel or their witnesses subsequently

added in OneNote. The notations include the following, written in type, above the

scanned document: "Note found on E. Salazars desk 08/27/18." Additionally, the following, written by hand, appears just below the note: "Note Found on E. Salazars Desk." HMS explains that the notations were made by Brandy Mann "who as a witness will lay the foundation." *Def.'s Resp.* at 7–8, Dkt. 223. HMS may offer the original note, but not the notations added by Brandy Mann, which may confuse the jury.

Exhibit 2706: Exhibit 2706 consists of thank you notes written by Carbajal's children to Chris and Pauline Hayes for donations made to their swim-a-thon fundraiser. Carbajal objects that the thank you notes are irrelevant. But according to HMS, the notes show that "Carbajal was comfortable inviting Chris Hayes to be around Carbajal's daughters," and show their interaction was "not merely casual, but supportive and appreciative." *Def.'s Resp.* at 8, Dkt. 223. The Court agrees that the thank you notes are probative of the relationship between Carbajal and Hayes, and that relationship is relevant to Carbajal's allegations against Hayes. Exhibit 2706 will not be excluded at this time, but the Court will revisit this issue during trial.

Exhibit 2708: Exhibit 2708 consists of photographs taken at an HMS summer party hosted at Carbajal's home. Carbajal objects to relevance and HMS's failure to produce the photographs before now. HMS responds by asking the Court

to reserve ruling on the exhibit until trial. After reviewing the photographs, the Court concludes that they are not relevant. Moreover, as Carbajal points out, the photographs were not timely produced by HMS. The Court will therefore exclude Exhibit 2708 under Rule 37(c).

### D.    Affidavits & Declarations

Carbajal objects that numerous affidavits and declarations on HMS's exhibit list constitute hearsay and should be excluded. HMS responds that it has no intention of offering these documents for any purpose other than impeachment. The Court agrees that Exhibits 200-06, 2112, 2113, 2152, 2186, 2519, 2701, 2702, and 2704 are hearsay and may not be offered at trial except to impeach.

### E.    Testimony of Warren Peterson

Carbajal objects to HMS offering a declaration or testimony from Warren Peterson about what he did on Carbajal's computer the day after she was fired. She argues that the declaration (Exhibit 2170) is hearsay, and Mr. Peterson's expert testimony is inadmissible because HMS never disclosed him as an expert. Finally, she argues that Mr. Peterson's testimony is not relevant, because it only has to do with HMS's dismissed counterclaims.

HMS responds that Mr. Peterson will offer lay opinion testimony, not expert testimony. Namely, he will testify "to what he saw upon examination of

[Carbajal's] computer, and what in his common experience that indicates." *Def.'s Resp.* at 9, Dkt. 223.

Federal Rule of Evidence 701(c) prohibits non-expert witnesses from offering opinions that are based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." According to HMS, Mr. Peterson's testimony is not expert testimony because it simply consists of "what he witnessed" at HMS on August 31, 2017, "what he was instructed" to do with regard to Carbajal's "computers, passwords, IT security, etc.," and "security measures re Liz Alvarado's computer and email, and in his statements." Dkt. 192 at 4. Additionally, although it is not entirely clear from that description, it appears that HMS will also ask Mr. Peterson to testify that, based on his "common experience" in IT, he believes Carbajal deleted files from her computer.

Mr. Peterson will not be allowed to testify about the process he used to determine whether files and/or had been deleted from Carbajal's laptop, the result of his investigation, or his opinion—based on that investigation—that Carbajal destroyed files. Those opinions are plainly based on "technical" or "specialized knowledge" that would require his qualification as an expert witness under Rule 702. Moreover, as the Court explains elsewhere in this Order, such evidence would not be relevant to this case because it does not bear on HMS's motive for firing or

filing counterclaims against Carbajal.

However, to the extent that such testimony would be admissible for some other purpose, such as to impeach, Mr. Peterson may testify to the fact that he was asked by HMS to perform certain tasks, such as changing passwords, on Carbajal's computer. Additionally, he could testify to the following facts, which do not appear to be based on technical or specialized knowledge: that Carbajal's email inbox and "trash" folder were empty; and that there were no documents/files in the folders of Carbajal's computer. *See Peterson Dec.* ¶ 5, Dkt. 201-1.

### F.   Evidence of Carbajal's Prior Drug Use

Carbajal objects to the admission of her medical records (Exhibits 2601, 2602, and 2603) which contain references to her prior drug use. Those references, she explains, have no probative value because her drug use ceased more than ten years ago. And references to her drug use would likely prejudice the jury against her. HMS provides no response except to indicate that they do not object to redacting references to her criminal charges for alcohol and drug offense from the "rap sheet" (Exhibit 2707) that they intend to offer. The Court concludes that the probative value of any reference to Carbajal's prior drug use over a decade ago is substantially outweighed by the danger of unfair prejudice. *See* FED. R. EV. 403.

All references to Carbajal's drug and alcohol use shall therefore be redacted

from Exhibits 2601, 2602, 2603, and 2707.

### G.     Carbajal's Medical Records

Carbajal objects that her medical records (Exhibits 2601, 2602, 2603) constitute inadmissible hearsay. Moreover, she argues, HMS cannot use the hearsay exception for statements made for a medical diagnosis or treatment, FED. R. EV. 803(4), because without calling her physicians to the stand, HMS cannot establish the requisite foundation. HMS responds simply by asking the Court not to "categorically exclude[]" those records before it knows how they "might use them at trial." *Def.'s Resp.* at 11, Dkt. 223.[7]

The Court tends to agree that Carbajal's medical records contain inadmissible hearsay. However, at this stage, it not clear how HMS intends to establish foundation for Carbajal's medical records, what HMS's purpose will be in offering those records, or whether those records—or any portion of them—would fall within one of the hearsay exceptions. Without more information, the Court will reserve ruling on this issue until trial.

---

[7] Carbajal also objects to the admission of any marks that the defendants or their attorneys made to her medical records. But in their response, the defendants explained that they "plan to remove the mark ups before trial; such were in haste provided with those markings yet intact[.]" *Def.'s Resp.* at 11, Dkt. 223. The Court therefore need not analyze the admissibility of the markings.

### H.     Carbajal's Criminal Record

Carbajal objects to the admission of Exhibit 2707, which is a Notice of Clearance letter from the Department of Health and Welfare summarizing Carbajal's criminal history. She argues that Federal Rule of Evidence 609(b) prohibits HMS from admitting felony convictions more than ten years old without showing that the probative value of such evidence outweighs the risk of unfair prejudice. Additionally, she notes, Exhibit 2707 was not previously disclosed and is incomplete ("Page 1 of 2"). HMS responds simply by arguing that Carbajal's "lengthy rap sheet" is relevant to her credibility as a witness.

Section (a) of Rule 609 permits and requires courts to admit evidence of prior convictions for the purpose of impeachment in certain circumstances. But Section (b) of that rule limits the use of such evidence where the witness was convicted or released from confinement more than ten years earlier. In those cases, evidence of the conviction can only be offered to impeach if: "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."

The most recent misdemeanor or felony conviction reflected on Exhibit

2707 is from 2004, well over ten years ago. *Pl.'s Reply* at 9, Dkt. 235. And HMS has not explained how the probative value of any of Carbajal's convictions substantially outweighs their potentially prejudicial effect. The Court will therefore exclude Exhibit 2707 in its entirety.

## I.       HMS's Charts

Finally, Carbajal objects to Exhibits 2710, 2711, and 2712, which all relate to the number of employees who worked for HMS. This issue is now moot in light of the Court's decision to deem the numerosity element conclusively established. *See* Dkt. 234 & 247. These exhibits are irrelevant and will therefore be excluded.

## ORDER

**IT IS ORDERED that:**

1.       Defendants' Motion in Limine Re Prior Conviction (Dkt. 191) is **GRANTED**;

2.       Plaintiff's Omnibus Motion in Limine (Dkt 184) is **GRANTED, in part, and DENIED, in part**, as set forth in this Order; and

2.       Plaintiff's Motion Re: Defendants HMS and Hayes's Proposed Exhibits and Witnesses (Dkt. 210) is **GRANTED, in part, and DENIED, in part**, as set forth in this Order.

DATED: December 8, 2023

B. Lynn Winmill
U.S. District Court Judge