UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIA ANGELICA "ANGIE" CARBAJAL, | Case No. 4:19-cv-00287-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| HAYES MANAGEMENT SERVICES, INC.; HAYES TAX & ACCOUNTING SERVICES, INC.; and CHRIS HAYES, | |
| Defendants. | |

## INTRODUCTION

Before the Court is Plaintiff Maria Angelica Carbajal's Motion for Attorney Fees and Costs (Dkt. 294). For the reasons explained below, the Court will partially grant and partially deny the motion and award Carbajal $349,496.00 in attorney fees and $3,262.11 in litigation expenses.

## BACKGROUND

In July of 2019, Carbajal filed this lawsuit against Hayes Management Services, Inc. (HMS). She claimed that her supervisor, Chris Hayes, sexually harassed her on several occasions and, in doing so, created a hostile work environment in violation of Title VII of the Civil Rights Act and the Idaho Human

Rights Act (IHRA). She further claimed that HMS had retaliated against her after she reported Mr. Hayes' harassment.

Shortly after HMS was served with Carbajal's Complaint, it filed an Answer containing three counterclaims against Carbajal for breach of contract, tortious interference with a prospective economic advantage, and punitive damages. *See* Dkts. 4 & 6. HMS first alleged that Carbajal had violated the terms of her "employment contract" and covenant not to compete. *Am. Answer* ¶¶ 73–84, Dkt. 6. Next, HMS claimed that Carbajal sowed "seeds of discontent" among other employees and used her position to entice HMS' payroll clients to take their business elsewhere. *Id.* ¶¶ 85–95. Finally, HMS sought an award of punitive damages for Carbajal's unspecified "oppressive, malicious and outrageous" conduct. *Id.* ¶¶ 91–100.

On September 21, 2022, Carbajal moved for summary judgment on HMS' counterclaims. Dkt. 130. In response, HMS contested Carbajal's legal arguments but failed to provide any evidence to support its positions. For that simple reason, the Court granted Carbajal's motion and dismissed all three of HMS' counterclaims. *Memo. Decision & Order* at 5–11, Dkt. 149.

On December 15, 2023, a jury returned a special verdict in favor of Carbajal. Dkt. 277. Carbajal prevailed on all her claims and received an award of

$111,172.00 in compensatory and punitive damages against HMS. *Id.*[1] Based upon that verdict, partial final judgment was entered against HMS and Chris Hayes. Dkt. 291.

Carbajal now seeks an award of attorney fees and costs. Defendants object to her request on several grounds. The issues are fully briefed and ripe for decision.

## LEGAL STANDARD

### 1.    Attorney Fee Statutes

Carbajal's request for attorney fees is governed by two statutes – one federal and one state. A plaintiff who prevails under Title VII of the Civil Rights Act may recover a reasonable attorney fee award. 42 U.S.C. § 2000e-5(k); *see also Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412 (1978). Under Title VII, to "prevail" means to succeed "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Thorne v. City of El Segundo*, 802 F.2d 1131, 1140 (9th Cir. 1986) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

State law in Idaho also provides for an award of attorney fees in certain cases. Under Idaho Code § 12-120(3), the prevailing party "in any civil action to recover on . . . a commercial transaction. . . shall be allowed a reasonable

---

[1] The jury awarded $36,172.00 in back pay, $25,000.00 in noneconomic damages, and $50,000.00 in punitive damages. Dkt. 277.

attorney's fee." In this context, the term "commercial transaction" includes "all transactions except for personal or household purposes." *Id.*; *see also Carrillo v. Boise Tire Co.*, 274 P.3d 1256, 1271 (Idaho 2012). Employment contracts, for example, are commercial transactions subject to the attorney fee provision of Section 12-120(3). *Oakes v. Boise Heart Clinic Physicians, PLLC*, 272 P.3d 512, 519 (Idaho 2012) (citing *Mackay v. Four Rivers Packing Co.*, 179 P.3d 1064, 1071 (Idaho 2008)). However, Section 12-120(3) does not apply to disputes that only peripherally involve commercial transactions. Rather, for the fee provision to apply, a commercial transaction must be "the gravamen of the lawsuit;" that is, it must be "integral to the claim" and must "be the basis upon which recovery is sought." *Simono v. House*, 379 P.3d 1058, 1062 (Idaho 2016) (internal citations and quotations omitted).

## 2.    Calculating Attorney Fees

Once a court decides to award attorney fees, it must calculate a reasonable fee award. "The starting point for determining a reasonable fee is the 'lodestar' figure, which is the number of hours reasonably expended multiplied by a reasonable hourly rate." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992); *see also Hensley*, 461 U.S. at 433. In determining a reasonable hourly rate, the Court considers the "experience, skill and reputation of the attorney requesting fees," *Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996), as well as "the prevailing

market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895

(1984). And, in determining the number of hours billed, the Court must exclude

hours that are duplicative or excessive.

Once the lodestar figure is calculated, the Court must ask "whether it is

necessary to adjust the presumptively reasonable lodestar figure on the basis of the

*Kerr* factors that are not already subsumed in the initial lodestar calculation."

*Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996) (footnote

omitted).[2] Ultimately, though, there is a "strong presumption that the lodestar

figure represents a reasonable fee," and that figure should only be adjusted "in rare

instances." *Id.* at 363 n. 8. (internal quotation marks and citation omitted).

## DISCUSSION

### 1.   Threshold Issues

Defendants raise three threshold objections to Carbajal's request for attorney

fees. First, they argue that Carbajal's motion should be denied outright because she

failed to comply with Federal Rule of Civil Procedure 54(d)(2)(B)(ii). Among

other things, that rule requires a motion for attorney fees to "specify the judgment

and the statute, rule, or other grounds entitling the movant to the award." FED. R.

CIV. P. 54(d)(2)(B)(ii). Defendants make much of the fact that Carbajal's motion

---

[2] The "*Kerr* factors" are the factors identified by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

and supporting memorandum do not specifically cite the Judgment (Dkt. 290) entered in this case on April 1, 2024. But denying Carbajal's motion on that basis would be utterly absurd. Only one judgment has been entered in this case. And Carbajal has clearly identified the basis for her fee request by citing the applicable statutory fee provisions and the Special Verdict Form reflecting the jury's verdict. *Pl.'s Memo. in Supp.* at 2, Dkt. 294-1. For all practical purposes, Carbajal *has* specified the judgment entitling her to a fee award. *See Stone Door Grp., LLC v. Meade*, No 119CV00271TAVCHS, 2022 WL 609585, at *3 (E.D. Tenn. Feb. 8, 2022) ("It is not required that the judgment entitling the movant to the award be specified if the movant specifies other grounds for the award.").

Second, Defendants object that Amanda Ulrich lacks sufficient personal knowledge to testify to the hours billed by other attorneys in her firm. The Court rejected this very same argument when Defendants last raised it. *See Mem. Decision and Order* at 4 n.1, Dkt. 159. Neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence require each attorney and staff member who spent time working on a case to submit a separate affidavit or declaration in support of an attorney fee request. Ms. Ulrich, who is a named partner in the law firm representing Carbajal, is competent to testify regarding her firm's business records showing the work performed by each attorney in her firm.

*See Catanzano v. Doar*, 378 F.Supp.2d 309, 320–21 (W.D. NY 2005) (collecting cases).

Finally, Defendants object to Carbajal's request for fees incurred in defending against Defendants' counterclaims. Defendants note that those counterclaims were brought under state law, so the attorney fee provision of Title VII does not apply. Moreover, they argue, Carbajal cannot recover her fees under Idaho Code § 12-120(3) because, in responding to the counterclaims, Carbajal denied the existence of an employment contract—i.e., a "commercial transaction." Defendants argue that Carbajal is "bound by her pleadings" and cannot now take the position that the counterclaims involved a "commercial transaction" that triggered the application of Section 12-120(3).

Defendants' objection does not hold water. Section 12-120(3) authorizes an award of attorney fees to the prevailing party in any "civil action" brought "to recover on . . . any commercial transaction." Typically, the relevant "civil action" is comprised of the claims brought by a plaintiff in a complaint. However, when the disputed fees were incurred litigating a *counterclaim*, what matters is the allegations that underlie the defendant's counterclaims, rather than the allegations in the plaintiff's complaint. *See Montierth v. Dorssers-Thomsen*, 539 P.3d 578, 592 (Idaho 2023) (treating counterclaim as the relevant "civil action" for purposes of Section 12-120(3)); *see also Precise Innovations, LLC v. Aerospace Engineering*

*and Support, Inc.*, CIVIL ACTION No. 4:21-00420-WGY, 2024 WL 3342486, at

*6 (D. Idaho July 9, 2024) (denying attorney fees under Section 12-120(3) because

allegations underlying counterclaim did not involve a commercial transaction).[3] In

other words, the defendant's *answer and counterclaim* becomes the relevant

pleading for purposes of Section 12-120(3). The key, then, is whether the

counterclaim was brought to recover on a "commercial transaction," such as an

employment contract.

Defendants' counterclaim for breach of contract was clearly brought to

recover on an alleged commercial transaction. They claimed that Carbajal breached

her "employment contract" and covenant not to compete. And, indeed, Defendants

themselves claimed an entitlement to attorney fees under Section 12-120(3)—the

very provision that Carbajal now invokes. *See Knudsen v. J.R. Simplot Company*,

483 P.3d 313, 329 (Idaho 2021) (quoting *Carter v. Gateway Parks, LLC, No.

47246*, 483 P.3d 971, 984 (Idaho 2020) ("[Appellant] cannot now assert that this

case does not involve a commercial transaction because he requested attorney fees

under section 12-120(3) in his underlying complaint.")). Ultimately, the analysis is

---

[3] As the Idaho Supreme Court recently explained in *Breckenridge Prop. Fund 2016, LLC v. Wally Enterprises, Inc.*, Idaho Code § 12-120(3) is applied on a claim-by-claim basis. 516 P.3d 73, 87 (Idaho 2022). Thus, "if more than one claim is pled, there can be more than one 'gravamen,' and attorney fees can still be awarded for a specific claim, if a claim is of the type covered by I.C. § 12–120(3)[.]" *Id.* (quoting *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 36 P.3d 218, 224 (Idaho 2001)).

**MEMORANDUM DECISION AND ORDER**-8

quite simple. In bringing its counterclaim, HMS sought "to recover on" an alleged employment contract. Carbajal prevailed by persuading the Court to dismiss that claim on summary judgment. Thus, under the plain language of Section 12-120(3), the Court *must* award Carbajal her reasonable attorney fees incurred in litigating the counterclaim.

The same is not true as to HMS' counterclaims for tortious interference with a prospective economic advantage and punitive damages. Those claims were based on allegations largely unrelated to Carbajal's purported employment contract. Although Carbajal argues that those allegations were loosely "associated with Carbajal's employment with HMS," *Memo. in Supp.* at 5, Dkt. 294-1, Section 12-120(3) requires more than a mere association. *Breckenridge Prop. Fund 2016*, 516 P.3d at 87–88 ("Although there was a commercial transaction involved . . . the commercial transaction was too far removed from the theory of recovery to warrant application of I.C. § 12–120(3)."). Ultimately, Carbajal's employment relationship with HMS was not integral to HMS' claims of tortious interference and punitive damages, and the alleged employment contract did not form the basis upon which HMS sought recovery. *Brower v. E.I. DuPont de Nemours & Co.*, 792 P.2d 345, 349 (Idaho 1990) ("[T]he award of attorney's fees is not warranted every time a commercial transaction is remotely connected with the case.").

Alternatively, Carbajal argues that Title VII entitles her to recover fees incurred in defending against HMS' counterclaims for tortious interference and punitive damages. The Court disagrees. As discussed above, Carbajal prevailed on her retaliation claim and will be permitted to recover all reasonable fees incurred in litigating that claim. She may not, however, extend Title VII's fee provision to fees incurred defending against HMS' state-law counterclaims, even if those claims were part of the conduct that she later claimed was retaliatory.[4] To allow such a recovery would be to stretch Title VII's fee provision past its breaking point.

## 2.    Entitlement to Fees

Having addressed Defendants' threshold objections, the Court must now determine Carbajal's entitlement to fees. As explained above, Carbajal relies upon two statutes in seeking a fee award: Title VII and Idaho Code § 12-120(3).

The Title VII analysis is straightforward. "In Title VII cases, a prevailing plaintiff 'ordinarily is to be awarded attorney's fees in all but special circumstances.'" *Barrios v. Diamond Contract Services, Inc.*, 461 Fed.Appx. 571, 572 (9th Cir. 2011) (unpublished) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978)). Carbajal succeeded on all her claims and was

---

[4] It is also worth noting that the Special Verdict Form does not indicate the basis for the jury's finding that Carbajal proved her retaliation claim. Thus, it is impossible to know whether the filing of the counterclaims ultimately formed the basis for Carbajal's success on her retaliation claim.

indisputably the prevailing party in this lawsuit. The Court will therefore award

Carbajal the reasonable fees incurred in litigating her Title VII claims.

*Christiansburg Garment Co.*, 434 U.S. at 419–19 (describing policy considerations

that support awarding attorney fees to prevailing plaintiffs). In an exercise of

discretion, however, the Court will not award fees for time spent drafting

Carbajal's initial Charge of Discrimination and engaging with the Idaho Human

Rights Commission, since they were incurred before this lawsuit was filed. The

Court has identified a total of 17.1 hours that fall within these category—12.3

hours billed by Ms. Ulrich, 3.7 hours billed by Ms. Casperson, and 1.1 hours billed

by Mr. Dustin. These hours will be deducted from the fee award.

　　Carbajal is also entitled to recover the fees she incurred defending against

HMS' counterclaim for breach of contract. As explained above, that counterclaim

was brought "to recover on" an alleged "commercial transaction"—an employment

contract. Carbajal prevailed on that claim at summary judgment, and the Court

therefore *must* award her reasonable attorney fees attributable to that counterclaim.

However, as discussed above, neither of HMS' other counterclaims fall within the

scope of Section 12-120(3). The timesheets submitted by Carbajal do not contain

sufficient detail for the Court to accurately apportion the fees on a claim-by-claim

basis. The Court will therefore apply a two-thirds reduction to the total number of

hours billed for work defending against HMS' counterclaims. This reduction will

reflect the fact that Carbajal is only entitled to recover fees incurred in defending against one of three counterclaims.

With their response brief, Defendants filed an exhibit purporting to identify all billing entries for time Carbajal's attorneys spent litigating HMS' counterclaims. *Def.'s Obj.* at 10–13, Dkt. 297. Carbajal did not specifically address Defendants' exhibit in her reply brief. The Court has compared Defendants' list to the timesheets submitted with Carbajal's fee motion and agrees with its characterization of the billing entries from October 28, 2019, until October 18, 2022.[5] During that timeframe, Carbajal's attorneys billed the following hours for work related to HMS' counterclaims: Ms. Ulrich billed 48.1 hours, Ms. Casperson billed 19.5 hours, and Mr. Dustin billed 10.6 hours. As explained above, the Court will apply a two-thirds reduction to those hours to account for the fact that Carbajal is only entitled to fees incurred in defending against one of the three counterclaims. This results in a reduction of 31.7 of Ms. Ulrich's hours, 12.9 of Ms. Casperson's hours, and 7 of Mr. Dustin's hours.

---

[5] Some of the billing entries during this time period are not facially tied to HMS' counterclaims. For example, Defendants ask the Court to deduct 1.8 hours billed on November 30, 2020, with the description: "Reviewed documents produced by defendants." On its face, that entry does not clearly relate to HMS' counterclaims. But the Court is not omniscient, and there may very well be an explanation—for example, the documents produced may have been tied directly to the counterclaims. Carbajal had an opportunity to challenge Defendants' characterizations of the billing entries in her reply brief. And it is her duty to demonstrate that she is entitled to recover her fees. Therefore, for purposes of reducing the fee award by the hours associated with HMS' non-contract-based counterclaims, the Court accepts Defendants' characterization of those hours as set forth in Exhibit A to their response brief.

However, the Court disagrees with Defendants' characterization of the hours billed from January 24, 2023, to November 24, 2023. The first portion of entries during this period are for time spent seeking attorney fees associated with a separate motion—Defendants' motion to compel Carbajal to undergo an independent medical examination (IME). Those hours are attributable to litigation surrounding Carbajal's Title VII claims, not HMS' counterclaims. Accordingly, no reduction is needed. The second portion of the entries are associated with briefing on Carbajal's motion in limine which sought to exclude evidence related to HMS' counterclaims. Once again, these hours need not be reduced because they were directly attributable to litigating Carbajal's Title VII claims.

In sum, Carbajal is entitled to recover the reasonable attorney fees she incurred litigating her Title VII claims. And, under Section 12-120(3), she is entitled to recover the reasonable attorney fees incurred in defending against HMS' counterclaim for breach of contract.

## 2.    The Lodestar Method

Having determined that Carbajal is entitled to a reasonable fee award, the Court must now calculate the award by multiplying the attorneys' hourly rates by the number of hours each attorney billed. The result—the "lodestar amount"—constitutes a presumptively reasonable fee award. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

### A.      Hourly Rates

First, the Court must determine reasonable hourly rates for the attorneys whose fees are sought. Three attorneys from the firm of Casperson Ulrich Dustin PLLC represented Carbajal in this matter. DeAnne Casperson and Amanda Ulrich billed the majority of the hours. Their current hourly rates are $360 and $310, respectively. Ryan Dustin also billed several hours in this matter at a rate of $280 per hour.

Defendants have not challenged these hourly rates and the Court finds them to be reasonable. *See* Dkt. 284 (finding the same rates to be reasonable). All three attorneys have significant experience litigating employment cases, including cases specifically involving claims under Title VII and the IHRA. Plaintiff's counsel took this case on a contingent fee basis. And these rates are commensurate with the prevailing market rates in the community and are supported by the experience, skill, and reputation of counsel. *See generally Birch Decl.*, Dkt. 294-4; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Plaintiff's counsel's hourly rates have increased during this litigation. However, they took this case on a contingency fee basis and have not been paid in the five years since it began. The Court will therefore exercise its discretion and apply the attorneys' "current rates to all hours billed during the course of the litigation." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007).

**B.     Number of Hours Expended**

Next, the Court must determine the number of hours reasonably expended by Carbajal's attorneys. As the party seeking a fee award, Carbajal bears the burden of showing that her attorneys billed a reasonable number of hours. *Hensley*, 461 U.S. at 431; *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *as amended by* 80 F.2d 1373 (9th Cir. 1987). "By and large," however, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Carbajal seeks an award of fees for 1,144.4 hours billed by her attorneys during this litigation. In support of her request, Carbajal has submitted a sworn declaration from Ms. Ulrich along with the timesheets reflecting the hours billed in this case. Counsel's timesheets contain the date on which each hour was billed, a description of the task or tasks performed, the applicable hourly rate, the number of hours billed, and the attorney who expended the time.

The Court has reviewed the materials submitted by Carbajal and finds the hours billed to be reasonable, except as described below. Defendants object to only two portions of Carbajal's billing entries as excessive or duplicative. The Court addresses those objections now.

### A.   Time spent responding to HMS' Motion for Summary Judgment (Dkt. 32).

On February 28, 2020, HMS filed a Motion for Summary Judgment (Dkt. 32) seeking dismissal of Carbajal's Title VII claims. HMS argued that Title VII did not apply because HMS did not have fifteen or more employees during the relevant time periods. Determining a person's employment status is a highly fact-intensive task. Accordingly, by its nature, HMS' argument involved a detailed review of a significant quantity of materials, including years of tax returns, payroll records, and employment records. *See* Dkts. 33–50 (ten affidavits and hundreds of pages of employee records submitted in support of summary judgment).

Carbajal's attorneys billed a total of 62.2 hours responding to HMS' motion for summary judgment. The product of those hours was a twenty-page response brief, four charts, two affidavits, and a statement of undisputed facts. Dkt. 52. To be sure, considering the volume of materials submitted by HMS and the fact-intensive nature of the numerosity issue, it was not unreasonable for counsel to spend a significant amount of time on their response. Moreover, it is of no import that Carbajal's attorneys only spent half the time—34.2 hours—responding to an earlier Motion for Summary Judgment (Dkt. 8) filed by HMS. That early motion, filed before discovery commenced, was accompanied only by a two-page brief and a fraction of the supporting documentation that would later be filed with HMS' second summary judgment motion. In short, HMS' first (Dkt. 8) and second (Dkt.

32) motions for summary judgment were substantially different in depth and breadth. Equating those motions for purposes of attorney fees simply because they bore the same title would be ludicrous.

Still, after reviewing the timesheets and summary judgment materials, the Court agrees that 62.2 hours was somewhat excessive. The Court will therefore exercise its discretion and deduct ten hours of time spent responding to HMS' summary judgment motion. A reduction of 5.5 hours will be applied to hours billed by Ms. Ulrich and a reduction of 4.5 hours will be applied to hours billed by Ms. Casperson.[6]

### B.    Time spent preparing Carbajal's Trial Brief (Dkt. 178).

Carbajal's attorneys billed 14.8 hours to draft her thirteen-page Trial Brief (Dkt. 178). Ms. Ulrich billed 10 of those hours, and Ms. Casperson billed 4.8 hours. Defendants object that the attorneys' work was "duplicative" and "should have taken only half the time."

There is no indication that Ms. Ulrich's and Ms. Casperson's work on the trial brief was duplicative. It is not uncommon for attorneys to collaboratively research and draft a single brief—especially one that addresses a wide variety of

---

[6] This reduction corresponds to the proportion of hours billed by each attorney. Of the total 62.2 hours, Ms. Ulrich billed 34.3 hours (55%) and Ms. Casperson billed 27.9 hours (45%). In effecting the 10-hour reduction, the Court therefore attributes 55% of the reduction to Ms. Ulrich and 45% of the reduction to Ms. Casperson.

issues. Nor was 14.8 hours excessive. District of Idaho Local Civil Rule 16.4 requires parties to submit trial memoranda before trial. The memoranda must outline the parties' positions, with supporting argument and authorities, and any outstanding legal or evidentiary issues. The Court requires trial memoranda for a reason—the failure to submit an adequate trial memorandum can lead to unnecessary delays during trial.

Carbajal's trial brief set forth the factual and legal basis for each of her claims. It also contained thorough discussions of specific legal and evidentiary issues that were anticipated to arise at trial, including issues related to successor liability and Title VII's numerosity requirement. The brief not only identified key issues, but contained substantial legal authority, legal analysis, citations to the record, and analyses of relevant decisions previously issued by this Court.

Carbajal should not be penalized for her attorneys' thorough compliance with Local Rule 16.4. As explained above, trial briefs are an essential part of the trial process. After reviewing the docket and materials in this case, the Court finds that 14.8 hours was a reasonable amount of time to spend researching and drafting Carbajal's trial brief.

## 3.    The Lodestar Calculation

Taking into account the reductions discussed above, the lodestar amount is $349,496.00, as illustrated below:

MEMORANDUM DECISION AND ORDER-18

| Attorney | Hours Billed | Deductions | Hourly Rate | Total |
|---|---|---|---|---|
| Amanda Ulrich | 616.3 | 12.3 hours<br>31.7 hours<br>5.5 hours | $310.00 | $175,708.00 |
| DeAnne Casperson | 447.3 | 3.7 hours<br>12.9 hours<br>4.5 hours | $360.00 | $153,432.00 |
| Ryan Dustin | 80.8 | 1.1 hours<br>7 hours | $280.00 | $20,356.00 |
| **Total** | | | | $349,496.00 |

**4.     Attorney Fee Award**

Neither party has requested a lodestar adjustment. And the Court sees no basis for modifying the presumptively reasonable lodestar amount. The Court will therefore award Carbajal attorney fees in the amount set forth above.

**5.     Bill of Costs**

Carbajal also seeks to recover litigation expenses of $3,262.11 and statutory costs of $1,881.90. Under Title VII, a court may award a prevailing party their "out-of-pocket expenses" incurred during the litigation. *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992), *vacated in part on other grounds by* 984 F.2d 345 (9th Cir. 1993). Defendants raised no objection to Carbajal's itemized litigation expenses. And after reviewing those expenses, the

Court finds them reasonable. The Court will therefore award Carbajal $3,262.11 in litigation expenses.

Carbajal filed a Bill of Costs (Dkt. 294-3) without first meeting and conferring as required by Local Civil Rule 54.1. When Defendants filed an objection based on that failure, Ms. Ulrich immediately reached out to confer with defense counsel. But defense counsel refused to confer about the substance of the Bill of Costs until the Court resolved their objection based on Local Rule 54.1.

The judicial system always works best when parties work together in good faith. But the rules are the rules. And "[i]t has long been a tradition in this district to hold counsel strictly to the Local Rules, especially regarding bills of costs." *Blaine Larsen Processing, Inc. v. Hapco Farms, Inc.*, No. 97–0212–E–BLW, 2000 WL 35539979, at *14 (D. Idaho Aug. 9, 2000). The Court will continue that tradition today, recognizing that awarding costs despite clear noncompliance with the local rules would reduce those rules to mere suggestions. The Court will, however, give Carbajal the opportunity to re-file her Bill of Costs once she has satisfied her obligations under the local rules, but no later than 14 days after the issuance of this Order.

## ORDER

**It is ORDERED that:**

1.     Plaintiff's Motion for Attorney Fees and Costs (Dkt. 294) is

**GRANTED, in part, and DENIED, in part,** as set forth above. Therefore,

     A.     Plaintiff is awarded $349,496.00 in attorney fees and $3,262.11

in litigation expenses.

     B.     Plaintiff may re-file her Bill of Costs no later than 14 days after

the issuance of this Order.

DATED: August 30, 2024

B. Lynn Winmill
U.S. District Court Judge